494 So.2d 1134 (1986)
Abron SCOTT, Appellant,
v.
STATE of Florida, Appellee.
No. 66422.
Supreme Court of Florida.
September 25, 1986.
John Thor White, St. Petersburg, for appellant.
*1135 Jim Smith, Atty. Gen., and Ann Garrison Paschall, Asst. Atty. Gen., Tampa, for appellee.
EHRLICH, Judge.
This is a direct appeal from a judgment adjudicating Abron Scott guilty of murder in the first degree and sentencing him to death. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. We affirm both the conviction and sentence.
The main evidence presented against Scott during the guilt phase of the trial consisted of statements made to Detective John Halliday of the Pinellas County Sheriff's Department. Scott told the detective that he and Amos Robinson[1] accosted a man outside a Tampa bar. They beat him until he appeared unconscious, placed him in the back seat of his car and drove him to a deserted area in Pinellas County. When they tried to get the victim out of the car he struggled, so they again beat him into submission. Although, in his statement to Detective Halliday, Scott maintained that he originally intended to merely steal the victim's car and leave him to walk back to Tampa, he admitted that after the second beating, he got back into the car and intentionally ran over the victim.
During the sentencing phase of the trial, Dr. Appenfeldt, a court-appointed psychologist, testified on direct examination by the defense concerning statements made by Scott during his interview. Scott told Dr. Appenfeldt that first Robinson attempted to run over the victim. When Robinson was unsuccessful, Scott got behind the wheel and ran over the victim, getting stuck in the sand and pinning the victim under the car. With the assistance of an unidentified man, the two pulled the car out of the sand and left in the victim's car.
Several days later the victim's body, in an advanced state of decomposition, was found in a depression off the road near the spot where the car had gotten stuck. Scott was arrested after he and Robinson were linked to the victim's car which had been found the day before the body was discovered.
Scott was charged with first-degree murder, robbery and kidnapping. He was convicted on all charges.[2] The jury recommended and the trial court imposed the death sentence. The trial court found five aggravating factors:[3] 1) Prior conviction of a violent felony; 2) the murder was committed in connection with the crime of kidnapping; 3) the crime was committed for financial gain; 4) the crime was especially heinous, atrocious, and cruel; 5) the crime was committed in a cold, calculated and premeditated manner without any pretense of moral or legal justification. The trial court expressly found two mitigating factors: 1) the age of the defendant at the time of the crime, eighteen; 2) the capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired.[4] In her sentencing order, the trial judge also noted that she had considered the defendant's mental problems, drug problems, and family problems in deciding the sentence to be imposed.
Although Scott does not challenge his conviction for first-degree murder, we have reviewed the record and find that there was sufficient evidence to support the conviction. The points raised on appeal go to the propriety of the imposition of the death penalty. Scott challenges the trial court's findings as to two of the five aggravating circumstances: 1) that the crime was especially heinous, atrocious and cruel; and 2) that the crime was committed in a cold, calculated and premeditated manner. The *1136 three aggravating factors which are not challenged in this appeal are supported by the record and were properly applied under the facts of this case.
Scott first argues that the trial court's finding that the murder was especially heinous, atrocious, and cruel was error because this aggravating circumstance was not proven beyond a reasonable doubt. See Card v. State, 453 So.2d 17 (Fla.), cert. denied, 469 U.S. 989, 105 S.Ct. 396, 83 L.Ed.2d 330 (1984); State v. Dixon, 283 So.2d 1 (Fla. 1973), cert. denied, 416 U.S. 943, 94 S.Ct. 1950, 40 L.Ed.2d 295 (1974). In her sentencing order the trial judge found this aggravating circumstance applicable, reasoning:
[C]ertain facts were clear in this particular case. Fact number one, the victim in this particular case was chosen at random. These two gentlemen didn't care who they picked. They picked anyone that had a nice car who they wanted to steal from. So they took some poor soul who happened to be at the wrong place at the wrong time who happened to be on the street. They proceeded at this time to beat this individual up. In fact, as I recall the testimony, the individual was beaten so badly, that he had to be lifted up, picked up, and thrown in the back of the car.
For the life of me, I can't imagine why this was necessary. If, in fact, all these two men were going to do is to rob this individual, they could have taken anything. They could have had the money. They could have had the property. They could have gone about their business. But no, that wasn't what they did.
.....
[T]hey brought this person clear over to Pinellas County to some isolated place where they could kill him so that nobody would ever find him. If ever found, he would be so far gone that nobody would ever recognize who he was.
So in my heart, despite what everyone says, I believe that this crime was premeditated. I think that this crime was thought out. I think these men planned to kill the victim. I think that he must have realized that. Why else were they driving him to Pinellas County if they weren't going over to Pinellas County to kill this man? Why did they come here and drop this man off in the middle of nowhere?
We must consider that if he was unconscious, that at some point in time he came to consciousness while there, because the evidence is clear that they beat him up again.
Now, we have this man being brought from Hillsborough County. He is now in Pinellas County, totally lost. And if intent was to rob him of his possessions, why didn't they leave him alone? Why didn't they just leave him? No, that wasn't good enough. By direct testimony from this defendant's statement, whether intentional or not, this defendant chose to run this man down. And from the testimony  and although not considering the testimony that came out in the co-defendant's trial  it became apparent in the sentencing phase that at that particular time, the car got stuck on this victim. And he, Scott, proceeded to rev the engine, spin the tires and in effect, just push this man down in the sand where he couldn't breath anymore, and his ribs were crushed, whatever. I can't imagine anything more cruel... . [T]his man couldn't have thought anything other than they were going to kill him, because what other reason would they have to bring him over here? They beat him up again, and all of a sudden that car started to run him down on his body. I can't imagine a crueler way to kill someone. A gunshot to the head. One quick gunshot to the head. That's not to say that that is just a murder, but certainly that is less cruel; that is less heinous; that is less atrocious than what happened to this victim in this particular case. The court does find that this case was especially wicked, evil, atrocious and cruel.
Scott contends the evidence in support of this aggravating circumstance "was severely limited" and does not support the *1137 trial judge's conclusion that the victim "must have realized" that he was going to die or that the victim was pinned beneath the car and was suffocated while being pushed into the sand by spinning wheels. First, we note, there was sufficient evidence from which to conclude that the victim was aware of his impending death. The fact the victim struggled and was beaten a second time at the site of the murder clearly supports the trial court's conclusion that at some point the victim regained consciousness and must have realized that his abductors planned to kill him.
We also find no merit to Scott's contention that since the evidence does not support the trial court's finding that the victim was asphyxiated while pinned under the car, the trial judge must have relied on facts adduced at Robinson's trial which were contained in the state's sentencing memorandum and in the presentencing investigation report. In her sentencing order the trial judge expressly noted that although she was aware of the facts revealed during Robinson's trial, she had not relied on this information in imposing sentence. Although we find that there was sufficient competent evidence adduced during Scott's trial that the victim was pinned under the car, as Scott points out, there was no evidence that the victim was conscious or even alive at the time he was hit and pinned. We agree with Scott that without such evidence the fact that the victim was pinned under the car and may have suffocated as a result is insufficient to support a finding that the murder was heinous, atrocious and cruel. See Jackson v. State, 451 So.2d 458 (Fla. 1984) (actions after death of the victim are irrelevant in determining whether aggravating circumstance of heinousness applies; once victim becomes unconscious, circumstances of further acts contributing to his death do not support a finding of heinousness); See also Herzog v. State, 439 So.2d 1372 (Fla. 1983); Blair v. State, 406 So.2d 1103 (Fla. 1981). However, under the facts of this case, this deficiency in evidence does not preclude a finding that the murder was especially heinous, atrocious and cruel. The mental anguish suffered by the victim and the other circumstances surrounding the murder, for which there is ample record support, are sufficient to support the trial court's finding under section 921.141(5)(h). See Jennings v. State, 453 So.2d 1109 (Fla. 1984), vacated on other grounds, 470 U.S. 1002, 105 S.Ct. 1351, 84 L.Ed.2d 374 (1985). The victim was brutally beaten into a state of unconsciousness outside the Tampa bar. Once at the murder site, the victim struggled with his captors and was again mercilessly beaten into submission. The evidence supports the conclusion that at some point in time between the two beatings the victim regained consciousness and undoubtedly became aware of the likelihood of his death at the hands of his abductors. The stark terror felt upon such a realization cannot adequately be put into words. Such mental anguish alone has been held sufficient to support this aggravating factor. See e.g., Preston v. State, 444 So.2d 939 (Fla. 1984) (where woman was kidnapped, taken to deserted area, forced to walk at knife point speculating as to her fate, clearly cognizant of the likelihood of her death, finding that crime was especially heinous, atrocious, and cruel was proper.); Routly v. State, 440 So.2d 1257 (Fla. 1983) (terror felt by victim who was bound, gagged, thrown in trunk of car, taken to isolated spot where he was forcibly removed from truck and shot to death supports finding that crime was especially heinous, atrocious, and cruel), cert. denied, 468 U.S. 1220, 104 S.Ct. 3591, 82 L.Ed.2d 888 (1984).
The brutal senseless beatings which the victim was forced to endure further set this crime apart from the norm of capital felonies and clearly reflect the conscienceless, pitiless and unnecessarily torturous nature of this crime. See e.g., Thomas v. State, 456 So.2d 454 (Fla. 1984) (finding of heinousness proper where victim died as a result of a severe beating). Considering the totality of the circumstances which were supported in the record, we find that the trial court properly applied the aggravating circumstance of heinous, atrocious, and cruel.
*1138 As his second point on appeal, Scott argues that the trial court erred in finding the murder was committed in a cold, calculated and premeditated manner. First, Scott argues that this is not the type of "execution or contract murder" to which this factor ordinarily applies. Indeed, we have previously stated that this factor "ordinarily applies in those murders which are characterized as execution or contract murders, although that description is not intended to be all-inclusive." McCray v. State, 416 So.2d 804, 807 (Fla. 1982) (citing Jent v. State, 408 So.2d 1024 at 1032 (Fla. 1981), cert. denied, 457 U.S. 1111, 102 S.Ct. 2916, 73 L.Ed.2d 1322 (1982)). See also Routly v. State, 440 So.2d at 1265. We find the appellant's argument, that this aggravating factor is inapplicable in this case because a conventional weapon was not used to kill the victim, to be totally without merit. There is no relevant distinction between the execution-like killing in this case and those in similar cases in which we have upheld the application of this aggravating circumstance. See e.g., Card v. State, 453 So.2d 17 (Fla.), cert. denied, 469 U.S. 989, 105 S.Ct. 396, 83 L.Ed.2d 330 (1984); Routly v. State, 440 So.2d 1257 (Fla. 1983), cert. denied, 468 U.S. 1220, 104 S.Ct. 3591, 82 L.Ed.2d 888 (1984).
In challenging this aggravating circumstance, Scott primarily relies on the fact that in his statement to the police he maintained that he did not initially intend to kill the victim; but merely intended to steal his car and make him walk back to Tampa. Scott argues that under our decision in Cannady v. State, 427 So.2d 723 (Fla. 1983), this statement precludes a finding beyond a reasonable doubt on this issue. We disagree. In Cannady, the appellant stole money from a night clerk, kidnapped him, transported him to a wooded area and shot him. The trial court found the crime was committed in a cold, calculated and premeditated manner without pretense of moral or legal justification. As in this case, the only direct evidence of the manner in which the murder was committed was the appellant's own statements. The appellant in Cannady had repeatedly denied that he intended to kill the victim, explaining that he shot the victim because the victim jumped at him. We found that the state failed to prove beyond a reasonable doubt that this aggravating factor applied because those statements "establish[ed] that appellant had at least a pretense of a moral or legal justification, protecting his own life." 427 So.2d at 730. In Cannady we further reasoned that although the trial court expressed disbelief in the appellant's statements based on evidence that the victim was a quiet, unassuming minister and the fact that he was shot five times, those factors alone were not sufficient to prove the aggravating factor beyond a reasonable doubt.
In the instant case, Scott made no statement tending to prove that he acted under a pretense of moral or legal justification. It was within the provence of the trial court to determine the weight to be given his statement. See Card v. State, 453 So.2d at 23. The trial court rejected appellant's story, finding it totally irreconcilable with the facts before her. As the trial judge reasoned, if the two men merely intended to rob the victim they could have taken his car and left him unconscious outside the Tampa bar. Instead, they loaded him into the back seat of his car and took him to a secluded area where they again beat him. First, Robinson attempted to run over him; then Scott got behind the wheel and intentionally struck him. We have upheld a finding of cold, calculated and premeditated under similar circumstances. Card v. State, 453 So.2d 17. In Card the victim was placed in her own car and transported from a Western Union office to a secluded area where she was forced out of the car and her throat was cut. We found the fact that "the appellant had ample time during this series of events to reflect on his actions and their attendant consequences," sufficient to evidence the heightened level of premeditation necessary under section 921.141(5)(i). 453 So.2d at 23-24. Likewise, in the instant case, the series of events leading up to the murder evidence the heightened level of premeditation *1139 necessary to support this aggravating factor. Therefore, we find the trial court properly discounted Scott's story and conclude that the circumstance of cold, calculated and premeditated was properly found.
We have considered the appellant's sentence in light of similar cases and find it appropriate. Finding no error warranting reversal of the trial court's judgment, the judgment of conviction and sentence of death are affirmed.
It is so ordered.
McDONALD, C.J., and ADKINS, BOYD, OVERTON and SHAW, JJ., concur.
BARKETT, J., concurs with conviction, and concurs in result only with sentence.
NOTES
[1] See Robinson v. State, 487 So.2d 1040 (Fla. 1986).
[2] Scott was sentenced to fifteen years for robbery to be served consecutively with a sixty-year sentence for kidnapping. Scott raises no challenge to these convictions and sentences. After reviewing the record, we find both the convictions and sentences to be proper.
[3] § 921.141(5)(b), (d), (f), (h) & (i), Fla. Stat. (1985).
[4] § 921.141(6)(f) & (g).