522 So.2d 802 (1988)
Clarence JACKSON, Appellant,
v.
STATE of Florida, Appellee.
No. 68097.
Supreme Court of Florida.
February 18, 1988.
Rehearing Denied May 2, 1988.
*804 James Marion Moorman, Public Defender, Tenth Judicial Circuit, and W.C. McLain, Asst. Public Defender, Tallahassee, for appellant.
Robert A. Butterworth, Atty. Gen. and Kim W. Munch, Asst. Atty. Gen., Tampa, for appellee.
EHRLICH, Justice.
The appellant, Clarence Jackson, appeals his convictions for first-degree murder and his sentence of death. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. Finding no reversible error, we affirm both the convictions and sentences.
A Hillsborough County grand jury indicted Clarence Jackson in October, 1981 for the first-degree murders of Roger McKay and Terrence Milton. A jury convicted Jackson on both counts and recommended death for both murders. The trial court sentenced Jackson to death on the convictions. We reversed Jackson's convictions and remanded for a new trial. Jackson v. State, 451 So.2d 458 (Fla. 1984).
The key witness at the first trial, James Lucas, died before the time of Jackson's second trial. Because he was unavailable to testify at the second trial, his prior testimony was read to the jury. According to Lucas' testimony, Jackson often shared heroin and other drugs with Lucas and the victims. Lucas testified that Jackson picked up McKay on a Saturday afternoon near an east-side Tampa bar. As Lucas drove, Jackson, sitting in the back seat, argued with McKay about drugs, then shot him in the back. After driving to a remote area, Jackson shot McKay again as he put him in the trunk of the car. Returning to the bar Saturday evening, Jackson found Milton, took him for a ride with Lucas driving, and shot Milton after arguing about drugs. Milton remained conscious for some time, begging for his life. After driving to another remote area, Jackson had Lucas stop at a bridge where Jackson shot Milton several more times, then dumped both bodies into a backwater of the Hillsborough River. The bodies were found several days later. Lucas eventually told detectives about the murders and Jackson was arrested. Jackson relied on an alibi defense, with his wife, son, and two friends testifying that Jackson was home *805 at a dinner party on the day of the murders.
On retrial, Jackson was again convicted of the first degree murders of McKay and Milton, with the jury recommending a life sentence without possibility of parole for twenty-five years for the killing of McKay and a sentence of death for the killing of Milton. The trial court agreed with the recommended sentences. In imposing the death sentence for the murder of Milton, the trial court found no statutory mitigating circumstances and the following nonstatutory mitigating circumstances: 1) statements of law enforcement officials that the defendant is a "model prisoner" and 2) the report of Dr. Mussenden that tests indicated the defendant would adjust well to prison life, be helpful and productive in the prison system, and not present behavioral problems. The trial court found, however, that the mitigating circumstances did not outweigh the aggravating circumstances found to exist: 1) the defendant was previously convicted of another capital felony or of a felony involving the use or threat of violence to the person;[1] 2) the capital felony was especially heinous, atrocious or cruel;[2] 3) the capital felony was a homicide and was committed in a cold, calculated and premeditated manner, without any pretense of moral or legal justification.[3]
Jackson raises a total of nine issues. Three issues from the guilt phase and three issues from the sentencing phase merit discussion. The remaining issues[4] have been carefully considered by this Court and found to be meritless.

Guilt Phase
The first issue urged concerns the trial testimony of state witnesses James Lucas and Sylvester Dumas. Prior to the introduction of Lucas' previous trial testimony and during the testimony of Dumas, objections were raised to testimony which Jackson describes as irrelevant evidence of collateral crimes. Jackson contends he was prejudiced by this testimony and is entitled to a new trial. § 90.404(2)(a), Fla. Stat. (1985); Peek v. State, 488 So.2d 52 (Fla. 1986); Drake v. State, 400 So.2d 1217 (Fla. 1981); Williams v. State, 110 So.2d 654 (Fla.), cert. denied, 361 U.S. 847, 80 S.Ct. 102, 4 L.Ed.2d 86 (1959). We disagree.
Evidence of collateral crimes or acts committed by the defendant is inadmissible if its sole relevancy is to establish bad character or propensity of the accused. Williams, 110 So.2d at 662. Evidence of other crimes or acts is admissible however, "if it casts light upon the character of the act under investigation by showing motive, intent, absence of mistake, common scheme, identity or a system or general pattern of criminality so that the evidence of the prior offenses would have a relevant or a material bearing on some essential aspect of the offense being tried." Id. See § 90.404(2)(a), Fla. Stat. (1985). "Among the other purposes for which a collateral crime may be admitted under Williams is establishment of the entire context out of which the criminal conduct arose." Smith v. State, 365 So.2d 704, 707 (Fla. 1978), cert. denied, 444 U.S. 885, 100 S.Ct. 177, 62 L.Ed.2d 115 (1979). See also Ruffin v. State, 397 So.2d 277, 280-81 (Fla.), cert. denied, 454 U.S. 882, 102 S.Ct. 368, 70 L.Ed.2d 194 (1981).
Among the comments admitted over objection were statements by Lucas that Jackson had an argument with an unnamed person in the back of a bar, threatened to kill him, and shot at him several times, just prior to taking the first victim in the car. During the testimony of Sylvester Dumas, the trial court, over objection, also admitted *806 testimony concerning a prior assault by Jackson on the victim McKay approximately two weeks before the murders.
We are persuaded that this testimony was admissible. Neither incident was given undue emphasis, the evidence was relevant, and its probative value was not outweighed by any improper prejudicial effect. See, e.g., Washington v. State, 432 So.2d 44, 47 (Fla. 1983). The testimony of a prior assault on the victim McKay by Jackson during an argument over drugs was not so remote in time as to be irrelevant and supported the state's theory that Jackson's motive for killing Milton and McKay was his belief that they were stealing his drugs and taking advantage of him. See Phillips v. State, 476 So.2d 194 (Fla. 1985) (Testimony concerning prior shooting incident at home of probation officers was relevant to prove motivation and intent in prosecution for murder of parole supervisor.) See also Mayberry v. State, 430 So.2d 908 (Fla. 3d DCA 1982); Wooten v. State, 398 So.2d 963 (Fla. 1st DCA), pet. for review dismissed, 407 So.2d 1107 (Fla. 1981); Outler v. State, 322 So.2d 623 (Fla. 3d DCA 1975), cert. denied, 336 So.2d 107 (Fla. 1976); Summit v. State, 285 So.2d 670 (Fla. 3d DCA 1973); Hutchinson v. State, 102 So.2d 44 (Fla. 2d DCA 1958).
The testimony by Lucas of an assault on an unnamed person prior to meeting McKay on the day of the murders was also properly admissible. The alleged assault on the unnamed person was one incident in a chain of chronological events which occurred on September 12, 1981, beginning with Jackson's visit to Lucas' home and ending with Jackson dumping the two bodies into the river. See Malloy v. State, 382 So.2d 1190, 1192 (Fla. 1979). The evidence established the entire context out of which the criminal action occurred and was probative to material factual issues, placing Jackson at the location where the first victim was encountered, supporting the state's theory that the second gun used in committing the murders was in Jackson's possession, and indicating Jackson's state of mind at the time and place in question. See Medina v. State, 466 So.2d 1046, 1049 (Fla. 1985); Ruffin, 397 So.2d at 280-81; Shriner v. State, 386 So.2d 525, 533 (Fla. 1980), cert. denied, 449 U.S. 1103, 101 S.Ct. 899, 66 L.Ed.2d 829 (1981); State v. Baker, 441 So.2d 1102, 1103 (Fla. 5th DCA 1983), pet. for review denied, 450 So.2d 485 (Fla. 1984); Lewis v. State, 369 So.2d 667, 668 (Fla. 2d DCA 1979).
In addition, the trial court admitted references to Jackson possessing weapons and bulletproof vests. We agree with Jackson's contention that this testimony was not relevant to any material fact in issue. Jackson's objection to it should have been sustained. The erroneous admission of such evidence is subject to harmless error analysis. See Craig v. State, 510 So.2d 857, 864 (Fla. 1987), cert. denied, ___ U.S. ___, 108 S.Ct. 732, 98 L.Ed.2d 680 (1988). Application of the harmless error test "requires an examination of the entire record by the appellate court including a close examination of the permissible evidence on which the jury could have legitimately relied, and in addition an even closer examination of the impermissible evidence which might have possibly influenced the jury verdict." State v. DiGuilio, 491 So.2d 1129, 1135 (Fla. 1986). The focus of the analysis is on the effect of the error on the trier-of-fact, with the burden remaining on the state to show the error was harmless. Id. at 1139. We find that the error in admitting this evidence was harmless and could not possibly have affected the outcome of the case. In light of the ample evidence establishing Jackson's guilt and discrediting his alibi defense and the admissible testimony of the prior assaults committed by Jackson, we do not find a reasonable possibility that the jury was unduly or improperly influenced by references to guns and bulletproof vests. The error therefore does not warrant reversal for a new trial.
Jackson next urges that the trial court erred in refusing to grant a mistrial because of comments by two witnesses and the prosecutor on his exercise of his right to remain silent. Jackson contends that the first comment on his right to remain silent occurred when prosecution witness *807 Detective Davis, questioned about Jackson's demeanor during the time of his arrest and booking, replied: "His demeanor was he appeared very calm." Jackson argues this error was compounded when the prosecutor relied on Davis' comment in closing as an indicator of Jackson's guilt. The second alleged comment on Jackson's silence occurred when Detective Luis testified as a defense witness. Defense counsel asked Detective Luis if anyone had attempted to interview Jackson's wife or son, who testified as alibi witnesses at trial. Detective Luis replied: "No. We at that point had no reason to interview them. Mr. Jackson made no statement to us when we arrested him insofar as any possible information that they may have." The trial court denied defense motions for mistrial in each instance, correctly ruling that the statement by Detective Davis was not a comment on Jackson's exercise of his right to remain silent and that the comment of Detective Luis was a comment on silence but the error was harmless.
We have adopted a very liberal rule for determining whether a comment constitutes a comment on silence. If the comment is "fairly susceptible" of being interpreted by the jury as a comment on the defendant's exercise of his right to remain silent it will be treated as such. DiGuilio; State v. Kinchen, 490 So.2d 21 (Fla. 1985). The testimony of Detective Davis and the prosecutor's reference to this testimony in closing argument merely referred to Jackson's demeanor at the time of his arrest. Neither statement referring to Jackson appearing "calm" at the time of his arrest can be construed as a comment on Jackson's right to remain silent.
If a comment is found to be "fairly susceptible" of being interpreted as a comment on silence, it is subject to harmless error analysis. DiGuilio, 491 So.2d at 1135. Jackson argues that the statement by Detective Luis was not harmless, relying on DiGuilio. In DiGuilio, the impermissible testimony put before the jury the fact that DiGuilio had failed to offer any plausible explanation at the time of his arrest for his suspicious presence in the midst of a drug deal and highlighted the fact that DiGuilio was not testifying at trial and still offered no plausible explanation. Because the permissible evidence was not clearly conclusive and there were plausible explanations for his presence which were consistent with innocence, the error was not harmless and constituted reversible error.
The impermissible testimony in the present case also put before the jury the fact that the appellant failed to offer any plausible alibi at the time of his arrest. In contrast to DiGuilio, however, a thorough review of the entire record reveals evidence discrediting the testimony of each of the alibi witnesses upon which the jury could have based their disbelief of Jackson's alibi. For example, in previous testimony, Jackson did not mention that Clara Aponte and Eileen Rivera were at his home on the night in question. Clara Aponte and Eileen Rivera, the friends allegedly at the dinner party on that Saturday evening, previously testified that they thought the dinner party took place the night before Jackson was arrested, approximately two weeks after the murders occurred. All of the alibi witnesses testified at the second trial that one of the reasons they could remember that the dinner party took place on September 12 was because Clara Aponte's daughter's birthday was September 14 and they discussed her upcoming birthday. Witness Davidson testified that while employed as a prosecutor with the State Attorney's office he took the depositions of the alibi witnesses, specifically asked them how they could remember the date and none of them mentioned a birthday. The prosecution also brought out discrepancies in the testimony of the alibi witnesses regarding what food was served at the dinner party and what events took place. Jackson's son and wife never made an attempt to explain to the police that Jackson was at home with them the evening the murders were committed. We hold that the trial court properly ruled under these circumstances that the statement by Detective Luis regarding Jackson's exercise of his right to remain silent was harmless error. On this record, we do not find "a reasonable possibility that the *808 error affected the verdict." DiGuilio, 491 So.2d at 1139.
The final issue addressed concerning the guilt phase of the trial involves the prosecutor asking defense witness Collins if he had ever been arrested and charged with homicide. Although the trial court prevented the State from obtaining an answer to the question, Jackson argues that a mistrial should have been granted because the jury was given the clear impression that the witness had not only been arrested for a homicide, but had been convicted of one as well due to the preceding line of questioning.[5] Even assuming the question was improper, we disagree.
The state submits the purpose of the question was to impeach Collins' credibility, showing bias by developing that Collins was arrested for homicide nine years prior to Jackson's trial and defense counsel, who was then an assistant state attorney, subsequently dismissed the charges. Jackson relies on Fulton v. State, 335 So.2d 280 (Fla. 1976). In Fulton, the prosecutor brought out, on cross-examination, that a defense witness was charged with second-degree murder, an offense entirely unrelated to the case being tried. The State offered evidence of the pending charges against the witness in an effort to show general bias against the State. This Court held that the trial court erred in overruling defense objections to the testimony because a defense witness' supposed bias, attributable to pending charges concerning a totally distinct offense, is not a proper subject for impeachment. We rejected the State's contention that the error was harmless because the testimony went to the heart of the defendant's claim of self-defense. Id. at 284-85.
We find the present case to be distinguishable from Fulton. In the case at hand, the charges were not then pending and the State was attempting to show a specific bias in favor of defense counsel, not a supposed general bias. Further, Collins' testimony did not go to the heart of Jackson's alibi defense as did the testimony of the witness in Fulton. Although Collins' testimony supported Jackson's claim that Jackson borrowed a truck from his brother, Collins could not recall when this transaction took place.
In addition to reviewing the record in light of the alleged errors asserted by Jackson, we have reviewed the evidence pursuant to Florida Rule of Appellate Procedure 9.140(f), and we conclude that there was sufficient evidence to support the convictions. We thus affirm appellant's convictions for murder in the first-degree.

Sentencing Phase
Jackson first contends the prosecutor improperly urged the jury to impose the death sentence on the basis of irrelevant, emotional considerations. Jackson argues that this Court must reverse the death sentence and remand for a new penalty phase trial because the prosecutor improperly asked the jury to deprive Jackson of life because McKay and Milton no longer enjoyed life and urged the jury to make a statement that the community cares about the sort of crimes committed in this case.
*809 We agree with Jackson's argument that the prosecutor's comment that the victims could no longer read books, visit their families, or see the sun rise in the morning as Jackson would be able to do if sentenced only to life in prison was improper because it urged consideration of factors outside the scope of the jury's deliberations.
The proper exercise of closing argument is to review the evidence and to explicate those inferences which may reasonably be drawn from the evidence. Conversely, it must not be used to inflame the minds and passions of the jurors so that their verdict reflects an emotional response to the crime or the defendant rather than the logical analysis of the evidence in light of the applicable law.
Bertolotti v. State, 476 So.2d 130, 134 (Fla. 1985). The trial court should have sustained defense counsel's objection and given a curative instruction. Id. at 134. We do not, however, find the misconduct here to be so outrageous as to taint the validity of the jury's recommendation. "In the penalty phase of a murder trial, resulting in a recommendation which is advisory only, prosecutorial misconduct must be egregious indeed to warrant our vacating the sentence and remanding for a new penalty-phase trial." Id. at 133.
No objection was made to the prosecutor's requesting the jury to show that the community cares. Accordingly, this issue was not preserved for appeal. Rose v. State, 461 So.2d 84, 86 (Fla. 1984), cert. denied, 471 U.S. 1143, 105 S.Ct. 2689, 86 L.Ed.2d 706 (1985); Jones v. State, 411 So.2d 165, 168 (Fla.), cert. denied, 459 U.S. 891, 103 S.Ct. 189, 74 L.Ed.2d 153 (1982). Had this issue been properly preserved, however, this remark was likewise not so egregious as to have warranted remanding for a new penalty-phase trial. Bertolotti, 476 So.2d at 133.
Jackson next contends the trial court erred in giving the standard jury instructions concerning the respective roles of the trial judge and the jury in the sentencing process because the instructions unconstitutionally dilute the jury's sense of responsibility for its sentencing decision, in violation of Caldwell v. Mississippi, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985), by stating that the final decision as to what punishment shall be imposed rests solely with the trial judge. Jackson also argues that the standard jury instructions fail to advise the jury of the requirement that the sentencing judge give the jury's recommendation great weight and completely fail to explain the special significance of a life recommendation under Tedder v. State, 322 So.2d 908 (Fla. 1975). No objection was made to the jury instruction prior to the time the jury retired to consider the penalty to recommend. Accordingly, this issue was not preserved for appeal. Fla.R.Crim.P. 3.390(d); Middleton v. State, 465 So.2d 1218, 1226 (Fla. 1985). Furthermore, we have previously addressed and rejected this argument. We are satisfied that the standard jury instructions fully advise the jury of the importance of its role and correctly state the law. Combs v. State, Case No. 68,477 (Fla. Feb. 18, 1988); Pope v. Wainwright, 496 So.2d 798 (Fla. 1986), cert. denied, ___ U.S. ___, 107 S.Ct. 1617, 94 L.Ed.2d 801 (1987).
In the final penalty phase issue, Jackson argues the trial court erred in finding the existence of two of the three aggravating circumstances. We reject Jackson's argument that the trial court erred in finding, as an aggravating circumstance, that the murder of Milton was heinous, atrocious and cruel. This Court has defined the aggravating circumstance of especially heinous, atrocious or cruel as follows:
It is our interpretation that heinous means extremely wicked or shockingly evil; that atrocious means outrageously wicked and vile; and, that cruel means designed to inflict a high degree of pain with utter indifference to, or even enjoyment of, the suffering of others. What is intended to be included are those capital crimes where the actual commission of the capital felony was accompanied by such additional acts as to set the crime apart from the norm of capital felonies  *810 the conscienceless or pitiless crime which is unnecessarily torturous to the victim.
State v. Dixon, 283 So.2d 1, 9 (Fla. 1973), cert. denied, 416 U.S. 943, 94 S.Ct. 1950, 40 L.Ed.2d 295 (1974). We disagree with Jackson's characterization of the murder of Terrence Milton as a "simple shooting death" and find that Teffeteller v. State, 439 So.2d 840 (Fla. 1983), cert. denied, 465 U.S. 1074, 104 S.Ct. 1430, 79 L.Ed.2d 754 (1984), relied on by Jackson, is clearly distinguishable from the present case. In Teffeteller, the victim received a single gunshot and then lingered before death in a hospital. Milton, not dying instantly from his initial gunshot wound, was required to get into a laundry bag and lie on the back floor of Jackson's car. Despite pleading to be taken for medical treatment, Milton was driven around remote areas of Hillsborough County, undoubtedly aware of the likelihood of his impending death. The mental anguish suffered by Milton is sufficient to support the trial court's finding that the crime was especially heinous, atrocious, and cruel. See Scott v. State, 494 So.2d 1134 (Fla. 1986) (Trial court properly applied the aggravating circumstance of heinous, atrocious, and cruel when evidence supported the conclusion that victim regained consciousness and undoubtedly became aware of the likelihood of his death at the hands of his abductors.)
We also reject Jackson's argument that the trial court erred in finding that the homicide of Milton was committed in a cold, calculated and premeditated manner. The trial court made the following findings:
After having shot and killed the first victim, Roger McKay, the Defendant stuffed McKay's body into the trunk of the Defendant's automobile and then made a well-reasoned and calculated attempt to remove traces of the crime by taking his automobile through a car wash and by attempting to conceal the bullet holes in the right front seat of the Defendant's automobile. .. . Thereafter, in an obviously premeditated manner, the Defendant, with his accomplice Lucas, picked up the second victim, Terrence Wayne Milton, in the Defendant's automobile. The Defendant had Milton sit in the right front seat, where the Defendant had previously shot Roger McKay. After driving this victim around for a period of time, the Defendant shot Terrence Wayne Milton in the back and after more driving and having reached a point on U.S. Highway 301, appropriate for disposing of the bodies, the Defendant dragged the victim, Milton, from the back floor of his automobile, shot him through the head and dumped both bodies in the Hillsborough River.
The fact that Jackson had ample time during this series of events leading up to the murder of Milton to reflect on his actions and their attendant consequences was sufficient to evidence the heightened level of premeditation necessary under section 921.141(5)(i). See Scott, 494 So.2d at 1138; Card v. State, 453 So.2d 17 (Fla.), cert. denied, 469 U.S. 989, 105 S.Ct. 396, 83 L.Ed.2d 330 (1984). Therefore, we find the trial court properly found that the circumstance of cold, calculated and premeditated was present in this case.
We have considered the appellant's sentence in light of similar cases and find it appropriate. Finding no error warranting reversal, the convictions and the sentences are affirmed.
It is so ordered.
McDONALD, C.J., and OVERTON, SHAW, BARKETT, GRIMES and KOGAN, JJ., concur.
NOTES
[1] § 921.141(5)(b), Fla. Stat. (1985).
[2] § 921.141(5)(h), Fla. Stat. (1985).
[3] § 921.141(5)(i), Fla. Stat. (1985).
[4] (1). Whether the trial court erred in admitting evidence of prior consistent statements made by a key state witness.

(2). Whether the trial court erred in prohibiting Jackson and a defense witness from explaining prior inconsistent statements on direct examination.
(3). Whether the trial court improperly restricted cross-examination of a state witness.
[5] Excluding the bench conferences where argument on the objections were made, the questioning the jury heard proceeded as follows:

Q. Have you ever been previously convicted of a crime, Mr. Collins?
A. Yes.
Q. What was that crime?
Mr. Fuente: I object to that, Judge. That's improper.
Mr. Skye: Approach the bench, Judge?
The Court: All right. Approach the bench.
[Bench conference during which the court sustained the objection.]
Q. Did you tell us how many times you've been convicted of a crime?
A. Did I tell you how many times?
Q. How many times? Can you tell us that?
A. Well, I served prison one time for being convicted.
Q. That's all you remember?
A. And probation.
Q. You served prison or you got probation?
A. I got prison term and then I got time again for probation time.
Q. I see. Were you ever arrested for a homicide charge?
Mr. Fuente: Judge, I object strenuously. Request to approach the bench.
The Court: Approach the bench.
[Bench conference during which the objection was sustained and a motion for mistrial denied.]