604 So.2d 465 (1992)
Abron SCOTT, Petitioner,
v.
Richard L. DUGGER, etc., Respondent.
Abron Scott, Appellant,
v.
State of Florida, Appellee.
Nos. 73240, 76450.
Supreme Court of Florida.
July 23, 1992.
Rehearing Denied September 24, 1992.
*466 Larry Helm Spalding, Capital Collateral Represenative and Gail E. Anderson, Asst. Capital Collateral Representative, Tallahassee, and K. Leslie Delk, Sp. Asst. Capital Collateral Representative, Norman, Okl., and Billy H. Nolas, Sp. Asst. Capital Collateral Representative and Julie D. Naylor, *467 Sp. Asst. Capital Collateral Representative, Ocala, for petitioner/appellant.
Robert A. Butterworth, Atty. Gen., and Robert J. Landry, Asst. Atty. Gen., Tampa, for respondent/appellee.
PER CURIAM.
Abron Scott appeals the trial court's denial of his motion to vacate his conviction and sentence pursuant to Florida Rule of Criminal Procedure 3.850. We also have before us a petition for writ of habeas corpus. We have jurisdiction pursuant to article V, section 3(b)(1) and (9), of the Florida Constitution.
Scott was convicted of first-degree murder, robbery, and kidnapping. The jury recommended and the trial judge imposed the death sentence. On appeal, this Court affirmed both the conviction and the sentence. Scott v. State, 494 So.2d 1134 (Fla. 1986). After the Governor issued a death warrant in 1988, Scott filed a 3.850 motion in circuit court and a petition for habeas relief with this Court. The circuit court granted a stay of execution, and this Court granted Scott's motion to hold the habeas proceedings in abeyance during the pendency of the 3.850 proceedings in circuit court. The circuit court summarily denied all but one claim in Scott's 3.850 motion. Following a hearing on the claim that Scott received ineffective assistance of counsel in the penalty phase of the trial, the circuit court denied relief as to that claim as well.

Direct Appeal of the Denial of the Rule 3.850 Motion
Of the fourteen claims[1] presented in his 3.850 motion, Scott seeks review of the trial court's rejection of the following fourteen: 1) that the death sentence is disproportionate, disparate, and invalid based upon the newly discovered evidence that Scott's codefendant Amos Robinson received a life sentence; 2) that executing a mentally retarded capital defendant constitutes cruel and unusual punishment in violation of the Florida Constitution; 3) that summary denial of all but a portion of one claim was erroneous; 4) that Scott was denied effective assistance of counsel at the guilt phase; 5) that the opinions of the mental health expert were professionally inadequate; 6) that Scott was forced to undergo criminal proceedings although he was not legally competent; 7) that Scott was denied effective assistance of counsel at the penalty phase; 8) that Scott did not knowingly and intelligently waive his Miranda[2] rights and that counsel was ineffective in failing to properly litigate this issue; 9) that Scott's mental defects rendered him incapable of forming specific intent and thus precluded the application of the "cold, calculated, and premeditated" (CCP) and "heinous, atrocious, and cruel" (HAC) aggravating circumstances; 10) that the CCP and HAC aggravating circumstances were applied in an unconstitutional manner; 11) that the jury was misled by instructions and arguments which diluted their sense of responsibility for sentencing, contrary to Caldwell,[3] and that counsel was ineffective in failing to properly litigate this issue; 12) that the jury was misled and incorrectly informed about its function at capital sentencing and that counsel was ineffective for failing to object to these comments and instructions; 13) that the jury instruction at sentencing impermissibly shifted the burden of proof to Scott; and 14) that the injection of nonstatutory aggravating factors rendered the sentencing phase arbitrary and capricious and that counsel was ineffective for failing to object and seek a mistrial. We find claims 2-14 either to be without merit or to be procedurally barred because not raised on direct appeal. Smith v. State, 445 So.2d 323, 325 (Fla. 1983), cert. denied, 467 U.S. 1220, 104 *468 S.Ct. 2671, 81 L.Ed.2d 375 (1984). Thus, we affirm the trial court's denial of these claims. However, we find claim 1 to be dispositive and vacate Scott's death sentence.
On direct appeal, this Court vacated codefendant Amos Robinson's death sentence and remanded for a new sentencing proceeding before a jury. Robinson v. State, 487 So.2d 1040 (Fla. 1986). Upon the jury's recommendation, Robinson was resentenced to life. Based upon Robinson's subsequent life sentence, Scott's 3.850 motion requested that his death sentence be vacated as disproportionate, disparate, and invalid. The circuit court summarily denied relief on this claim, finding it "untimely" and "improper" under Rule 3.850.
Even when a codefendant has been sentenced subsequent to the sentencing of the defendant seeking review on direct appeal, it is proper for this Court to consider the propriety of the disparate sentences in order to determine whether a death sentence is appropriate given the conduct of all participants in committing the crime. Witt v. State, 342 So.2d 497 (Fla.), cert. denied, 434 U.S. 935, 98 S.Ct. 422, 54 L.Ed.2d 294 (1977). While Witt involved review of a death sentence on direct appeal, this case involves review in a 3.850 proceeding. Scott characterizes Robinson's life sentence, which was imposed after this Court affirmed Scott's conviction and death sentence, as "newly discovered evidence" and, thus, cognizable under Rule 3.850.
Traditionally, a defendant seeking relief on the basis of evidence discovered after his conviction has been affirmed on appeal was required to apply to the appellate court for leave to petition the trial court for a writ of error coram nobis. Hallman v. State, 371 So.2d 482 (Fla. 1979), abrogated on other grounds, Jones v. State, 591 So.2d 911 (Fla. 1991). However, rule 3.850 has supplanted the writ of error coram nobis, and newly discovered evidence claims are now brought under rule 3.850. Richardson v. State, 546 So.2d 1037 (Fla. 1989). Thus, the issue presented here is whether a codefendant's subsequent life sentence constitutes newly discovered evidence which would permit collateral relief.
Two requirements must be met in order to set aside a conviction or sentence because of newly discovered evidence. First, the asserted facts "must have been unknown by the trial court, by the party, or by counsel at the time of trial, and it must appear that defendant or his counsel could not have known them by the use of diligence." Hallman, 371 So.2d at 485. Second, "the newly discovered evidence must be of such nature that it would probably produce an acquittal on retrial." Jones v. State, 591 So.2d 911, 915 (Fla. 1991). The Jones standard is also applicable where the issue is whether a life or death sentence should have been imposed. Id.
In the instant case, we find that both requirements have been met and relief is appropriate. Robinson's life sentence was not imposed until after Scott's direct appeal was completed. Thus, this fact could neither be known nor discovered at the time that this Court reviewed Scott's death sentence. Moreover, the record in this case shows that Scott and Robinson had similar criminal records, were about the same age, had comparable low IQs, and were equally culpable participants in the crime. In a letter to the governor and other members of the Clemency Board, trial judge Susan Schaeffer made the following observations about the relative culpability of the codefendants:
As to the crime itself, they were both involved in all aspects of it. They both participated in the robbery of the victim, his kidnapping, his beatings and, although Scott eventually ran the man down with the automobile, it was only after Robinson concocted this method of killing the victim, and, in fact was the first to try, but failed. It is clear that this is not a case where Scott was the "triggerman" and Robinson a mere unwitting accomplice along for the ride. In fact, "there is little to separate out the joint conduct of the co-defendants which culminated in the death of the decedent." See Messer v. State, [330 So.2d 137, 142 *469 (Fla. 1976), cert. denied, 456 U.S. 984, 102 S.Ct. 2259, 72 L.Ed.2d 863 (1982)].
Judge Schaeffer recused herself from hearing Scott's 3.850 motion because she felt unable to give the State a fair hearing due to her conviction that Scott's sentence must be set aside. At the hearing regarding the judge's recusal, the judge stated that the codefendants were "equally deranged and equally had poor records."
Based upon this record, this Court probably would have found Scott's death sentence inappropriate had Robinson's life sentence been factored into our review on direct appeal. See Slater v. State, 316 So.2d 539 (Fla. 1975) (defendants should not be treated differently upon the same or similar facts). The instant case is distinguishable from Garcia v. State, 492 So.2d 360 (Fla.), cert. denied, 479 U.S. 1022, 107 S.Ct. 680, 93 L.Ed.2d 730 (1986), where this Court rejected a defendant's argument that his death sentence denied him equal justice because none of the other three participants in the crime received a sentence of death. Garcia did not involve equally culpable participants; Garcia admitted that he was the trigger-man. Although this Court addressed the hypothetical situation where one of the accomplices was also a triggerman, the Court concluded that the evidence in Garcia supported the sentencing judge's conclusion that the aggravating factors outweighed the mitigating factors. Id. at 368. This is in sharp contrast to the instant case where Judge Schaeffer stated "I will have to go on record at the time of my sentence if the co-defendant [had] already been sentenced to life, I would have sentenced Mr. Scott to life despite the jury's recommendation."
Accordingly, we hold that in a death case involving equally culpable codefendants the death sentence of one codefendant is subject to collateral review under rule 3.850 when another codefendant subsequently receives a life sentence.

Petition for Writ of Habeas Corpus
Petitioner also seeks habeas corpus relief on the following grounds: 1) that Scott was denied effective assistance of counsel on direct appeal, as evidenced by counsel's failure to raise claims 2-6; 2) that Scott's death sentence is unconstitutionally disproportionate and disparate; 3) that the trial court's erroneous ruling that any statements which Scott made to mental health experts could be introduced if the experts were called to support an insanity defense deprived Scott of his rights to present a defense and to the effective assistance of counsel; 4) that Scott's mental defects rendered him incapable of forming specific intent and thus precluded the application of CCP and HAC; 5) that Scott's mental defects precluded knowing and intelligent waiver of his Miranda rights; and 6) that there was purposeful racial discrimination in the selection of the jury.
In order to prevail on a claim of ineffective assistance of appellate counsel, the petitioner must show that counsel's performance fell below an objective standard of reasonableness and, but for counsel's unprofessional errors, there is a reasonable probability that the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); Johnson v. Dugger, 523 So.2d 161 (Fla. 1988). We find that the petitioner's allegations fail to meet the Strickland test. In light of the record in this case, appellate counsel could not have effectively and convincingly argued claims 3, 5, or 6. If there is no chance of convincingly arguing a particular issue, then appellate counsel's failure to raise that issue is not a substantive and serious deficiency and the first prong of Strickland is not met. Engle v. Isaac, 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982); Ruffin v. Wainwright, 461 So.2d 109 (Fla. 1984). Similarly, claim 4 (application of CCP and HAC) does not involve deficient performance by counsel. On direct appeal, counsel challenged the sufficiency of the evidence to support the trial court's findings of HAC and CCP. This Court concluded that both aggravating circumstances were properly found. Scott, 494 So.2d at 1137, 1139. Counsel's performance cannot be deemed deficient for failing to raise every conceivable aspect of *470 a claim. As to claim 2, we note that habeas corpus is not a substitute for a motion for post-conviction relief pursuant to rule 3.850. Johnson v. State, 185 So.2d 466 (Fla. 1966), overruled on other grounds, Brumit v. Wainwright, 290 So.2d 39 (Fla. 1973). Claim 2 was properly raised in Scott's 3.850 motion; thus, habeas relief is denied. Accordingly, we find that the petitioner is not entitled to relief on any of these claims and deny his petition for writ of habeas corpus.

Conclusion
For the reasons discussed above, we deny Scott's petition for writ of habeas corpus and affirm the trial court's denial of claims 2-14 in the rule 3.850 motion. However, based upon claim 1 in the rule 3.850 motion, we vacate Scott's death sentence and remand for imposition of a life sentence without eligibility for parole for twenty-five years.
It is so ordered.
BARKETT, C.J., and McDONALD, SHAW, KOGAN and HARDING, JJ., concur.
OVERTON, J., concurs in part and dissents in part with an opinion.
GRIMES, J., dissents with an opinion.
OVERTON, Justice, concurring in part and dissenting in part.
I concur in all parts of the opinion except the remedy. I would find that Scott is entitled to a new sentencing hearing. I would not, however, impose a life sentence.
GRIMES, Justice, dissenting.
The majority opinion is contrary to existing case law and any reasonable definition of finality.
In the first place, it was Scott, not Robinson, who did the killing. As noted in our original opinion:
In October 1983 Robinson and Abron Scott accosted a man in the parking lot of a Tampa bar. After beating him unconscious, they placed the victim in the back seat of his car and drove to an isolated area in Pinellas County. After they pulled the victim out of the car, he and Scott started fighting. Robinson attempted to run over the victim with the car, but stopped in order to keep from hitting Scott too. Scott then beat and choked the victim and finally ran over him with the car, which became stuck in the sand while resting on the victim.
Robinson v. State, 487 So.2d 1040, 1041 (Fla. 1986). While they may have been equally culpable in motivation, they were not equally culpable in the commission of the murder.
The reason Robinson got a life sentence upon remand is because the jury made a recommendation of life imprisonment at his new penalty phase trial. Under these circumstances, the principle of Tedder v. State, 322 So.2d 908 (Fla. 1975), came into play, and because there was a reasonable basis for the jury's recommendation, the court was required to follow it.
In Garcia v. State, 492 So.2d 360 (Fla.), cert. denied, 479 U.S. 1022, 107 S.Ct. 680, 93 L.Ed.2d 730 (1986), this Court specifically rejected the very argument that Scott now makes. Garcia had been tried separately and convicted and sentenced before his three accomplices. Two of the accomplices later plea bargained and received concurrent life sentences. The third went to trial and received consecutive life sentences. On appeal, Garcia argued that his accomplices' sentences should be considered in our review of his sentence to death. In response to this argument, we stated:
The evidence against appellant included an admission that he was a trigger-man. Even if we accept arguendo that one of the accomplices was also a trigger-man, there is no error in sentencing appellant to death where, as in this instance, the evidence supports the sentencing judge's conclusion that the aggravating factors outweigh the mitigating factors. Jacobs v. State, 396 So.2d 1113 (Fla.), cert. denied, 454 U.S. 933, 102 S.Ct. 430, 70 L.Ed.2d 239 (1981). Appellant's argument misapprehends the nature of proportionality review. Our proportionality *471 review is a matter of state law. Pulley v. Harris, 465 U.S. 37, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984); State v. Henry, 456 So.2d 466 (Fla. 1984). Such review compares the sentence of death to the cases in which we have approved or disapproved a sentence of death. It has not thus far been extended to cases where the death penalty was not imposed at the trial level. Proffit v. Florida, 428 U.S. 242, 259 n. 16, 96 S.Ct. 2960 n. 16, 49 L.Ed.2d 913 (1976); Palmes v. Wainwright, 460 So.2d 362 (Fla. 1984); Brown v. Wainwright, 392 So.2d 1327 (Fla.), cert. denied, 454 U.S. 1000, 102 S.Ct. 542, 70 L.Ed.2d 407 (1981). Prosecutorial discretion in plea bargaining with accomplices is not unconstitutionally impermissible and does not violate the principle of proportionality. Palmes v. Wainwright. In the case of the third accomplice who went to trial and received consecutive life sentences, "an exercise of mercy on behalf of the defendant in one case does not prevent the imposition of death by capital punishment in the other case." Alvord v. State, 322 So.2d 533, 540 (Fla. 1975), cert. denied, 428 U.S. 923, 96 S.Ct. 3234, 49 L.Ed.2d 1226 (1976). We have conducted a comparative proportionality review of appellant's death penalty and we are satisfied that the sentence is not disproportionate to the crime or to the death sentences that we have approved or disapproved statewide.
Garcia, 492 So.2d at 368.
In another context, this Court pointed out the mischief of reopening death sentences each time the death sentence of a later convicted murderer is reduced to life imprisonment. Thus, in Sullivan v. State, 441 So.2d 609, 614 (Fla. 1983), we said:
Proportionality review does not mean the reopening of every prior death case when a new one is decided to determine whether the previous decision is consistent with the later one. Rather, it means viewing the later one in light of the previous decisions to ensure consistency of the later decision with the former ones. Otherwise, it would become necessary for this Court to continuously re-review every previous sentence. Defendants whose sentences of death have been affirmed cannot challenge their sentences again and again each time the death sentence of a later convicted murderer is reduced to life imprisonment. There would then be no end to the process and no standard for comparison.
Scott's sentence was originally upheld on five statutory aggravating circumstances that were weighed against two statutory mitigating circumstances. As a matter of law, his sentence is now being reduced to life imprisonment because of a new non-statutory mitigating circumstance. Under this reasoning, a defendant's good record in prison following the affirmance of his sentence to death could serve as a new nonstatutory mitigating circumstance to be used in collaterally attacking his original sentence. In fact, under this principle, whenever several persons actively participate in a murder, if one of them ever receives a life sentence, all previous death sentences imposed against the others will have to be reversed.
It is one thing to allow consideration of an accomplice's punishment in an original sentencing proceeding. It is quite another to set aside a valid death sentence because an accomplice's sentence has been subsequently reduced. After all, the enormity of Scott's crime is no less because Robinson has now been sentenced to life imprisonment.
I respectfully dissent.
NOTES
[1] Scott treats one of the claims presented to the trial court as two separate claims before this Court. He does not seek review of two of the claims presented to the trial court: 1) that Scott's rights under the Eighth and Fourteenth Amendments were denied by improper consideration of the victim's character and victim impact information; and 2) that the death sentence rests upon an unconstitutional automatic aggravating circumstance.
[2] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[3] Caldwell v. Mississippi, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985).