595 So.2d 929 (1992)
George M. HODGES, Appellant,
v.
STATE of Florida, Appellee.
No. 74671.
Supreme Court of Florida.
January 23, 1992.
Rehearing Denied April 20, 1992.
*930 James Marion Moorman, Public Defender, and Paul C. Helm, Asst. Public Defender, Tenth Judicial Circuit, Bartow, for appellant.
Robert A. Butterworth, Atty. Gen., and Candance M. Sunderland, Asst. Atty. Gen., Tampa, for appellee.
PER CURIAM.
George Hodges appeals his conviction of first-degree murder and sentence of death. We have jurisdiction pursuant to article V, section 3(b)(1), Florida Constitution, and affirm both the conviction and sentence.
In November 1986 Plant City police arrested Hodges for indecent exposure based on the complaint of a twenty-year-old convenience store clerk. Around 6:00 a.m. on January 8, 1987, the day Hodges' indecent exposure charge was scheduled for a criminal diversion program arbitration hearing, the clerk was found lying next to her car in the store's parking lot. She had been shot twice with a rifle and died the following day without regaining consciousness.
Hodges worked on the maintenance crew of a department store located across the road from the convenience store. A coworker told police that she saw Hodges' truck at the convenience store around 5:40 a.m. on January 8. Hodges, however, claimed to have been home asleep at the time of the murder because he did not have to work that day. His stepson, Jesse Watson, and his wife, Jesse's mother, supported his story. The police took a rifle from the Hodges' residence that turned out not to be the murder weapon. The investigation kept coming back to Hodges, however, and the police arrested him for this murder in February 1989.
*931 At trial Watson's girlfriend testified that, during the summer of 1988, she asked Hodges if he had ever shot anyone. She said he responded that he had shot a girl and had given Watson's rifle to the police and had disposed of his. Hodges' wife, contrary to her original statement to the police, testified that she did not know if Hodges had been in bed all night or when he had gotten up, that her son and husband had identical rifles, and that she did not know that Hodges had been arrested for indecent exposure.
As did his mother's, Watson's trial testimony differed from his original statement. He testified that he and Hodges had identical rifles and that his, not Hodges', had been given to the police. He said that he awakened before 6:00 a.m. the morning of the murder and heard Hodges drive up in his truck. Hodges then came into the kitchen carrying his rifle. When asked why he did not originally tell the police about this, he responded that he had wanted to protect Hodges. Watson also said that, two months after the murder, he saw the rifle in the back of Hodges' truck, wrapped in dirty plastic, and that there was a hole in the ground near the toolshed. He also testified that, several months later, Hodges told him that he had shot the girl at the convenience store.
The jury convicted Hodges as charged, and the penalty proceeding began the following day. At the end of the defense presentation counsel told the court that Hodges had become uncooperative, and Hodges stated on the record that he did not want to testify in his own behalf. After the jury retired to decide its recommendation, it sent a question to the court regarding the instructions. The court had the parties return to discuss the jury's request, but, shortly before that, Hodges had attempted to commit suicide in his holding cell. Defense counsel moved for a continuance and said that he could not waive Hodges' presence. The court, however, held that Hodges had voluntarily absented himself, told the jury that Hodges was absent because of a medical emergency, and reread the instructions on aggravating and mitigating circumstances. When the jury returned with its recommendation of death, Hodges was still absent.
After accepting the jury's recommendation, the court appointed two mental health experts to determine Hodges' competency to be sentenced. These experts' reports cautioned that Hodges might attempt to commit suicide again because of his anger and frustration, but concluded that he was competent to be sentenced. After considering these reports and hearing argument on the appropriate sentence, the court sentenced Hodges to death.
In the guilt phase the court allowed two detectives to testify, over objection, that the victim was adamant about prosecuting Hodges for indecent exposure. These detectives repeated that testimony in the penalty phase and also testified that the victim told them Hodges had been trying to get her to drop the indecent exposure charge. The victim's sister also testified to those matters, over objection, in the penalty phase. Hodges now argues that what the victim thought and said about prosecuting him was inadmissible hearsay. We agree that this hearsay should not have been admitted in the guilt phase.
Subsection 90.801(1)(c), Florida Statutes (1989), defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." The victim's statements were admitted to prove that she desired prosecution of Hodges. The State used the statements to prove that Hodges had a motive to kill the victim. The truth of the matter asserted was the victim's adherence to her desire to prosecute and, thus, the statements fall within the definition of hearsay.
The State suggests that if the statements were hearsay, an exception to the prohibition of their admission exists because they were used to prove a state of mind. In Bailey v. State, 419 So.2d 721 (Fla. 1st DCA 1982), the district court correctly held that statements of a victim cannot be used to prove the state of mind or motive of a defendant because the hearsay exception created by subsection 90.803(3)(a), *932 Florida Statutes (1989), does not apply to such a situation. We conclude, therefore, that the admission of the detectives' testimony as to statements made by the victim was error.
We then must determine whether the admission was harmless error. On the day of the homicide Hodges was scheduled for a pretrial diversion interview on the indecent exposure charge which had been initiated by the victim's complaint. On that date, but sometime after the homicide, Hodges called the mediator of the Community Mediation Program, told her there was no reason for him to come through diversion, and asked for the case to be sent back to the state attorney's office. Thus, it appears clear that Hodges knew of his continued prosecution. The victim's statements of her desire to continue prosecution become cumulative and could not have, in and of themselves, been a critical factor in the jury's deliberation. We, therefore, conclude that admitting the detectives' testimony was harmless error.
As stated earlier, the stepson's testimony at trial differed from his earlier statements. On cross-examination defense counsel impeached his testimony using his prior statements and letters he wrote to Hodges. During that cross-examination, Watson repeatedly stated that he was now telling the truth. On redirect examination the State asked Watson if the state attorney had accused him of not telling the truth in his original statement, and Watson answered in the affirmative. As one of its witnesses, the defense called a detective who had been present in the state attorney's office during Watson's first statement and questioned him about that interview and resultant statement. On cross-examination the State asked this detective if he and the state attorney did not make it clear to Watson that they did not believe his story. Defense counsel objected to this question as being irrelevant, but the court overruled that objection.
Now, Hodges claims that allowing the detective to answer improperly allowed the prosecutor to state his personal belief in Hodges' guilt. The defense, however, opened the door to what happened at that interview by questioning the detective about it. The question on cross-examination did not exceed the scope of direct examination and also related back to Watson's testimony. We find no error in this issue.
The evidence is sufficient to support Hodges' conviction of first-degree murder, and we affirm that conviction.
Turning to the penalty phase, Hodges argues that, after his suicide attempt, the court should have halted the proceedings and conducted a competency hearing rather than ruling that Hodges had absented himself voluntarily and continuing with the penalty phase. The cases that Hodges relies on, however, are distinguishable. E.g., Drope v. Missouri, 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975) (defendant shot himself during trial, pretrial report noted antisocial behavior and depression and recommended psychiatric treatment); Nowitzke v. State, 572 So.2d 1346 (Fla. 1990) (defendant found incompetent to stand trial, later declared competent after treatment and tried in spite of recurring aberrant behavior and defense request for another competency examination); Pridgen v. State, 531 So.2d 951 (Fla. 1988) (pretrial examination concluded defendant competent to stand trial, prepenalty phase examination showed that condition had worsened, trial court erred in refusing to grant continuance). In the instant case, prior to the suicide attempt, Hodges' conduct gave no indication that his competency might be of concern, and his attempted suicide surprised everyone connected with the case. Thus, there were no reasonable grounds to question his competency.
"A defendant has the constitutional right to be present at the stages of his trial where fundamental fairness might be thwarted by his absence." Peede v. State, 474 So.2d 808, 812 (Fla. 1985), cert. denied, 477 U.S. 909, 106 S.Ct. 3286, 91 L.Ed.2d 575 (1986). Here Hodges' trial had been concluded, and the penalty phase was all but over. The court discussed the jury's request with the attorneys and merely reread some of the instructions and then accepted *933 the jury's recommendation regarding penalty. Neither of these instances was a crucial portion of the trial where Hodges' absence would have caused him undue prejudice. Morgan v. State, 492 So.2d 1072 (Fla. 1986); see Garcia v. State, 492 So.2d 360 (Fla.), cert. denied, 479 U.S. 1022, 107 S.Ct. 680, 93 L.Ed.2d 730 (1986); Peede. Although attempted suicide may cast doubt on a person's competence, Drope, on the totality of the circumstances we conclude that the trial court did not err in holding that Hodges voluntarily absented himself. He missed no critical portion of his trial and his conduct gave no indication that he was considering suicide. Therefore, we find no error as to this issue.
During the penalty phase, two detectives and the victim's sister testified to the victim's statements about continuing to prosecute Hodges. Although we have held that this hearsay should not have been admitted during the guilt phase, "[b]oth the state and the defendant can present evidence at the penalty phase that might have been barred at trial because a `narrow interpretation of the rules of evidence is not to be enforced.'" Chandler v. State, 534 So.2d 701, 703 (Fla. 1988), cert. denied, 490 U.S. 1075, 109 S.Ct. 2089, 104 L.Ed.2d 652 (1989) (quoting State v. Dixon, 283 So.2d 1, 7 (Fla. 1973), cert. denied, 416 U.S. 943, 94 S.Ct. 1950, 40 L.Ed.2d 295 (1974)). The admission of evidence is within a trial court's discretion, and Hodges has shown no abuse of discretion in the trial court's allowing the jury to hear this evidence.
Hodges also argues that allowing testimony about the victim's prosecuting him for indecent exposure and his attempts to dissuade her from doing so, the victim's sister's breaking down in tears while testifying, and the prosecutor's closing argument violated Booth v. Maryland, 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987), and South Carolina v. Gathers, 490 U.S. 805, 109 S.Ct. 2207, 104 L.Ed.2d 876 (1989). Recently, however, the United States Supreme Court held that
if the State chooses to permit the admission of victim impact evidence and prosecutorial argument on that subject, the Eighth Amendment erects no per se bar. A State may legitimately conclude that evidence about the victim and about the impact of the murder on the victim's family is relevant to the jury's decision as to whether or not the death penalty should be imposed. There is no reason to treat such evidence differently than other relevant evidence is treated.
Payne v. Tennessee, ___ U.S. ___, 111 S.Ct. 2597, 2609, 115 L.Ed.2d 720 (1991). In so holding the Court receded from the holdings in Booth and Gathers that "evidence and argument relating to the victim and the impact of the victim's death on the victim's family are inadmissible at a capital sentencing hearing." Id. At 2611 n. 2. The only part of Booth not overruled by Payne is "that the admission of a victim's family members' characterizations and opinions about the crime, the defendant, and the appropriate sentence violates the Eighth Amendment." Id. The comments and testimony Hodges complains about are not the type of victim impact evidence that the Court did not address, i.e., is still Booth error, in Payne. Therefore, we find no merit to Hodges' Booth claim.
A further word about the prosecutor's argument is needed, however. In attempting to persuade the jury that life imprisonment would not be appropriate, Hodges' prosecutor made the same argument made in several other capital cases.[*]E.g., Taylor v. State, 583 So.2d 323 (Fla. 1991); Hudson v. State, 538 So.2d 829 (Fla.), cert. denied, 493 U.S. 875, 110 S.Ct. 212, 107 L.Ed.2d 165 (1989); Jackson v. *934 State, 522 So.2d 802 (Fla.), cert. denied, 488 U.S. 871, 109 S.Ct. 183, 102 L.Ed.2d 153 (1988). In Hudson we summarily dismissed the issue because Hudson had not objected and the argument did not constitute reversible error in that case. In both Jackson and Taylor we held that the instant argument was improper and, because on the circumstances of Taylor the argument was not harmless error and had been objected to, vacated Taylor's sentence and ordered resentencing. In Jackson, on the other hand, we found the argument harmless. The instant case is closer to Hudson and Jackson than to Taylor. Hodges did not object to the prosecutor's argument and on the circumstances of his case we find the argument harmless error.
In aggravation the trial court found that Hodges committed this murder both to disrupt or hinder the lawful exercise of government functions or enforcement of the law and in a cold, calculated, and premeditated manner. Hodges now argues that the record does not support finding these two aggravators, that the court improperly doubled them, and that the cold, calculated instruction is unconstitutional. We find no merit to these arguments. The court found that Hodges' sole purpose in killing the victim was to prevent his being prosecuted for indecent exposure and that he planned her execution in a cold, calculated, and premeditated manner. The record supports these conclusions, and the court properly found that these aggravators had been established. Cf. Shere v. State, 579 So.2d 86 (Fla. 1991); Pardo v. State, 563 So.2d 77 (Fla. 1990), cert. denied, ___ U.S. ___, 111 S.Ct. 2043, 114 L.Ed.2d 127 (1991); Koon v. State, 513 So.2d 1253 (Fla. 1987), cert. denied, 485 U.S. 943, 108 S.Ct. 1124, 99 L.Ed.2d 284 (1988); Lara v. State, 464 So.2d 1173 (Fla. 1985). Each aggravator is supported by sufficient distinct facts, and the trial court did not double them improperly. We have held the complained-about penalty instruction to be constitutional. Brown v. State, 565 So.2d 304 (Fla.), cert. denied, ___ U.S. ___, 111 S.Ct. 537, 112 L.Ed.2d 547 (1990).
As his final points on appeal, Hodges claims that the trial court failed to consider his mitigating evidence properly and that his death sentence is disproportionate. In the sentencing order the judge stated that he
attempted to find mitigating circumstances sufficient in weight to offset the above aggravating circumstances so as to prevent imposition of the death penalty. Mr. Hodges' family has spoken as to his character and dedication to his family. The Court has considered especially the loyalty that apparently existed between Mr. Hodges and his wife in her expressions of disbelief that he could perform such an act as the killing of BETTY RICKS, and her attempts to protect him in her initial statements to investigating officers after January 8, 1987. The Court has especially considered the relationship of love as apparently existed between the Defendant and his step-son and the true companionship they have apparently shared before the tragic events of January 8, 1987.
However, in balancing all aspects of the Defendant's character, which is the only statutorily enumerated mitigating circumstance the Court has found in the facts of this case, against the aforesaid aggravating circumstances, the Court finds that the aggravating circumstances far outweigh any mitigating circumstances and that the killing of BETTY RICKS by GEORGE MICHAEL HODGES requires the ultimate sanction.
The reference to "the only statutorily enumerated mitigating circumstance" obviously means the jury instruction directing consideration of all aspects of the defendant's character, i.e., nonstatutory mitigating evidence. It is also obvious that the judge considered the nonstatutory mitigating evidence that Hodges presented. Hodges complains that the judge did not specifically address his childhood, educational background, close family relationships, and employment history, but Hodges did not point out to the judge the nonstatutory mitigators he felt had been established. Lucas v. State, 568 So.2d 18 (Fla. 1990), directs that defendants share the burden of identifying *935 nonstatutory mitigators, and we will not fault the trial court for not guessing which mitigators Hodges would argue on appeal. There is no merit to Hodges' claim that the court refused to consider the evidence presented in mitigation. The cases cited by Hodges in his proportionality argument are factually distinguishable, and the death sentence is proportionate in the instant case. E.g., Shere; Koon; Lara.
Therefore, we affirm Hodges' death sentence as well as his conviction of first-degree murder.
It is so ordered.
SHAW, C.J., and OVERTON, McDONALD, GRIMES, KOGAN and HARDING, JJ., concur.
BARKETT, J., concurs in part and dissents in part with an opinion.
BARKETT, Justice, concurring in part, dissenting in part.
In essence there is really only one aggravating circumstance in this case. The aggravating factors of witness elimination and cold, calculated, and premeditated are so intertwined here that they should be considered as one. Against this aggravating factor, Hodges has grown to adulthood with no significant prior criminal history. Despite the fact that there was very little mitigation presented,[1] the trial judge found that Hodges was a contributing member of society, a good employee, and a good and caring husband and father to his four children. The death penalty is not to be applied to all murderers but is supposed to be reserved only for the most egregious and heinous of criminals. Hodges did not have a criminal record and, despite his terrible crime, he does not fit that description.
NOTES
[*] The prosecutor argued:

What about life imprisonment? What can a person do in jail for life? You can cry. You can read. You can watch TV. You can listen to the radio. You can talk to people. In short, you are alive. People want to live. You are living. All right? If [the victim] had had a choice between spending life in prison or lying on that pavement in her own blood, what choice would [she] have made? But, you see, [she] didn't have that choice. Now why? Because George Michael Hodges decided for himself, for himself, that [she] should die. And for making that decision, for making that decision, he, too, deserves to die.
[1] I believe more mitigation could and should have been presented. However, Hodges' mental condition culminating in his suicide attempt truncated the penalty phase.