[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 07-11943

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
November 9, 2007
THOMAS K. KAHN
CLERK

D. C. Docket No. 03-01591-CV-T-24TGW

GEORGE MICHAEL HODGES,

Petitioner-Appellant,

versus

ATTORNEY GENERAL, STATE OF FLORIDA,
SECRETARY, DEPARTMENT OF CORRECTIONS,

Respondents-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(November 9, 2007)

Before ANDERSON, CARNES and MARCUS, Circuit Judges.

CARNES, Circuit Judge:

In 1986 Betty Ricks, a twenty-year-old convenience store clerk, filed a criminal complaint against George Michael Hodges charging him with indecent exposure. After his other efforts to dissuade her from prosecuting him failed, Hodges shot Ms. Ricks twice in the head and neck with a rifle, killing her. That saved Hodges from the indecent exposure charge, a misdemeanor, but it landed him on Florida's death row where he has been for the last eighteen years.

More factual details and the procedural history involving Hodges' conviction for first degree murder and death sentence are set out in the state court decisions in the case, and in the district court's orders denying Hodges' 28 U.S.C. § 2254 petition and his motions related to that denial. See Hodges v. Sec'y, Dep't of Corr. (Hodges V), No. 8:03-cv-1591-T-24TGW, 2007 WL 949421, at *1 (M.D. Fla. Mar. 27, 2007); Hodges v. Sec'y, Dep't of Corr. (Hodges IV), No. 8:03-cv-01591-SCB-TGW, 2007 WL 604982, at *1–4 (M.D. Fla. Feb. 22, 2007); Hodges v. State (Hodges III), 885 So. 2d 338, 343–45 (Fla. 2004); Hodges v. State (Hodges II), 619 So. 2d 272, 273 (Fla. 1993); Hodges v. State (Hodges I), 595 So. 2d 929, 930–31 (Fla.), vacated, 506 U.S. 803, 113 S. Ct. 33 (1992).

This is Hodges' appeal from the district court's judgment denying him § 2254 relief from his murder conviction and death sentence.

2

## I.

The district court not only rejected all of Hodges' claims for relief and denied his § 2254 petition with prejudice, but it also denied him a certificate of appealability. Hodges V, 2007 WL 949421, at *4; Hodges IV, 2007 WL 604982, at *40. As he was entitled to do, Hodges renewed his request for a COA by filing a motion in this Court. See Fed. R. App. P. 22(b)(1); Hunter v. United States, 101 F.3d 1565, 1575 (11th Cir. 1996) (en banc) ("Under the plain language of the rule, an applicant for the writ gets two bites at the appeal certificate apple: one before the district judge, and if that one is unsuccessful, he gets a second one before a circuit judge."), abrogated on other grounds by Lindh v. Murphy, 521 U.S. 320, 117 S. Ct. 2059 (1997). Hodges' motion in this Court argued that he had made a substantial showing of the denial of a constitutional right, as required by the statute, 28 U.S.C. § 2253(c)(2). The statute also requires that a COA specify the issue or issues for which the required showing has been made. Id. § 2253(c)(3). Hodges' motion to this Court argued that he had made that showing as to the denial of relief on four grounds, each of which corresponded to a claim in his habeas petition.

As our rules provide, Hodges' COA motion went to a single judge of this Court. See 11th Cir. R. 22-1(d). That judge issued an order granting the motion as

3

to Grounds I and III, but denying it as to Grounds II and IV. See Hodges v. Attorney Gen., No. 07-11943 (11th Cir. May 15, 2007). The order meant that a COA had issued as to the two grounds specified in the order and only those two grounds. Under the rules of this Court, Hodges could have moved for reconsideration, asking the Court to expand the COA to cover the two grounds on which it had been denied. See 11th Cir. R. 22-1(d). If Hodges had done that, his motion would have gone before a three-judge panel. 11th Cir. R. 27-1(d). But Hodges did not file a motion to reconsider the denial of a COA on Grounds II and IV.

Instead, Hodges simply filed his briefs on the merits arguing not only Grounds I and III, which the COA permitted, but also Ground II which it did not. (Apparently, he gave up on Ground IV.) In his opening and reply briefs Hodges seeks to excuse his disregard of the part of the COA order refusing him permission to proceed on Ground II as nothing more than what 11th Cir. R. 27-1(g) terms "[a] ruling on a motion or other interlocutory matter," which under that rule is "not binding upon the panel to which the appeal is assigned on the merits, and the merits panel may alter, amend, or vacate it." Hodges asks in his briefs that we, as the merits panel, use our Rule 27-1(g) power to overrule the order denying a COA on Ground II, grant a certificate on that ground, and proceed to decide the matter

4

on the merits as though the COA order had permitted it all along.

Hodges' position is a bold one. He would have us hold that an appellant turned down on one or more issues at the COA stage has the right, under 11th Cir. R. 27-1(g), to brief those issues on the merits anyway, forcing his opponent and this Court to consider them the same as if they had been included in the COA order. Accepting Hodges' position would eviscerate the requirement in § 2253(c) that a COA specify the issues that will be considered at the merits stage of the appeal. There would be no point in having a COA order specify issues if it does not limit those that may be briefed, and a limitation that may be ignored by a disappointed appellant is no limitation at all.

The decision about which issues are to be considered on the merits must be made on the front end of an appeal, before the issues are briefed, argued, and decided on the merits. Gonzalez v. Sec'y for Dep't of Corr., 366 F.3d 1253, 1267 (11th Cir. 2004) (en banc) ("The certificate of appealability requirement is to be administered at the threshold of the appeal."). Otherwise, the § 2253(c) requirement will not serve its purpose, which is to weed out non-substantial issues in appeals before the parties and the court immerse themselves in the more substantial issues which deserve close scrutiny on the merits. Id. ("[T]he certificate of appealability requirement is not a toothless one, and it should be

5

applied with its purpose in mind, which is to separate out those appeals [and issues] that deserve more careful attention from the ones that do not."). There would be no point in weeding out issues before the merits briefs are filed if an appellant is free to throw the weeds back into those briefs. We will not apply our local rule 27-1(g) in a manner that effectively repeals § 2253(c)(3).

This is not the first time that a habeas petitioner has briefed and attempted to have us decide issues beyond those on which the COA was granted. It happened in Murray v. United States, 145 F.3d 1249 (11th Cir. 1998). We held in that case that the plain import of 28 U.S.C. § 2253(c)(3) mandates that review on the merits be limited to the issues specified in the COA order. Id. at 1250–51. As we explained, "there would be little point in Congress requiring specification of the issues for which a COA was granted if appellate review was not to be limited to the issues specified." Id. (citation omitted). We pointed out that even during the pre-AEDPA era when a certificate of probable cause to appeal was granted on fewer than all issues, we held that appellate review was limited to the issues specified. Id. "In view of that prior circuit law, it would be anomalous for us to hold, now that there is an issue specification requirement, see [28 U.S.C.] § 2253(c)(3), that the appeal is not limited to the issues specified." Id.; see also Maharaj v. Sec'y for Dep't of Corr., 432 F.3d 1292, 1302–03 (11th Cir. 2005) (limiting review to the issues

6

certified in the COA); <u>Tompkins v. Moore</u>, 193 F.3d 1327, 1332 (11th Cir. 1999) ("[L]et this opinion serve as clear notice" that "[a]rguments in a brief addressing issues not covered in the certificate, including any expansion granted by the court of appeals, will not be considered as a timely application for expansion of the certificate; those issues simply will not be reviewed.").

Hodges points to <u>Jones v. United States</u>, 224 F.3d 1251 (11th Cir. 2000), which came two years after the <u>Murray</u> decision and to the extent of any inconsistency with it, must yield to that earlier decision. <u>See</u> <u>United States v. Ohayon</u>, 483 F.3d 1281, 1289 (11th Cir. 2007) ("When a decision of this Court conflicts with an earlier decision that has not been overturned <u>en banc</u>, we are bound by the earlier decision."); <u>Cohen v. Office Depot, Inc.</u>, 204 F.3d 1069, 1072 (11th Cir. 2000) (en banc) (same); <u>United States v. Steele</u>, 147 F.3d 1316, 1317–18 (11th Cir. 1998) (en banc) (same). In any event, the <u>Jones</u> case is distinguishable.

Jones, who had been granted a limited COA by the district court, had moved in this Court to enlarge the certificate by adding one issue. <u>Jones</u>, 224 F.3d at 1256. After a single judge of this Court denied his motion, Jones moved for panel reconsideration. <u>Id.</u> Apparently, Jones' brief on the merits was somehow filed before his motion to reconsider was ruled on, because the government filed a motion "to dismiss the portions of Jones's appeal that addressed uncertified

7

issues." Id. Then, a two-judge panel carried both Jones' motion to expand the COA and the government's motion to dismiss with the case, which ordinarily would leave the motions for the merits panel to decide. Id. Later, however, before the case got to the merits panel, a three-judge motions panel denied Jones' motion to expand the COA but carried the government's intertwined motion to dismiss the parts not covered in the COA with the case to the merits panel. Id. It was under those convoluted and confusing circumstances that the merits panel decided to deny the government's motion to dismiss (the first time any judge or court had decided that motion), and to revisit the denial of Jones' motion to expand and grant it. Id.

That is not what we have here. Hodges did not move for reconsideration of the single-judge order partially denying his motion for a COA. No motion relating to the COA was carried with the case to the merits panel. There were no confusing circumstances leaving doubt about which issues would be addressed on the merits. Instead, this is a straight Murray type situation where the appellant simply chose to flout the clear COA order limiting the issues that could be briefed on the merits. Whatever may be said about the Jones decision, it did not give appellants license to do that. In light of our earlier Murray decision, it could not have done so.

For these reasons, we will strike the portions of Hodges' brief addressing

Ground II of his motion for a COA, because no certificate was granted as to that ground or issue.

In taking this action and making these statements, we do not mean to rule out the possibility that in an extraordinary case a merits panel may decide, after considering the merits of an issue on which the COA was granted, to expand the certificate to include another issue. That is what happened in Clark v. Crosby, 335 F.3d 1303 (11th Cir. 2003), where the panel, after oral argument, expanded the COA to include an additional issue, requested supplemental briefing on that issue, and then decided it. Id. at 1307. It is one thing for an appellate court in an unusual case to be persuaded during its consideration of the merits of a granted issue to expand the COA to include a related issue and to request supplemental briefing on that previously excluded issue. It is another thing for an appellant to simply ignore the COA order and brief any issue he pleases. We recognize the former practice and condemn the latter.

## II.

One of the issues on which the certificate of appealability was granted is Hodges' contention that his constitutional right to confrontation was violated when the state trial court admitted at both the guilt and penalty stages of his trial hearsay statements by the victim, Betty Ricks. The out-of-court statements concerned

9

Hodges' attempts to get her to drop the indecent exposure charges against him and her insistence on going forward with the prosecution.

## A.

At the guilt stage, one detective testified that during his investigation of the indecent exposure charge Ms. Ricks told him that she wanted to press charges, and she was adamant about doing so. Another detective also testified that Ms. Ricks had told him that she was adamant about prosecuting Hodges. That testimony was introduced at the guilt stage to prove motive, and the prosecutor used it to argue to the jury that although Hodges had been saying that the exposure incident was an accident, the victim was adamant about prosecuting him for it.

The Florida Supreme Court held that the admission of the victim's out-of-court statements at the guilt stage was error under Florida law because those statements were hearsay to which no exception applied. Hodges I, 595 So. 2d at 931–32. The court did not reverse the conviction, however, because it concluded that the admission of the statements was harmless. The court explained:

> We then must determine whether the admission was harmless error. On the day of the homicide Hodges was scheduled for a pretrial diversion interview on the indecent exposure charge which had been initiated by the victim's complaint. On that date, but sometime after the homicide, Hodges called the mediator of the Community Mediation Program, told her there was no reason for him to come through diversion, and asked for the case to be sent back to the state attorney's office. Thus, it appears clear that Hodges knew of his

10

continued prosecution. The victim's statements of her desire to continue prosecution become cumulative and could not have, in and of themselves, been a critical factor in the jury's deliberation. We, therefore, conclude that admitting the detectives' testimony was harmless error.

Id. at 932.

Confronted with the Confrontation Clause claim, the district court denied relief on it, agreeing with the Florida Supreme Court that the error in admitting the testimony was harmless. Hodges IV, 2007 WL 604982, at *5. The district court reasoned:

> The admission of the detectives' testimony as to the out-of-court statements made by Ricks was error; however, the error was harmless. Even without the hearsay statements, there was ample evidence of Hodges' guilt. Hodges' truck was observed at the murder scene at the time of the murder. Witnesses disputed his alibi defense. Hodges confessed killing Ricks to two different people.

Id.

We need not decide whether the admission at the guilt stage of the testimony about Ms. Ricks' statements to the detectives violated the Confrontation Clause. Even assuming that it did, any violation was harmless. Under Fry v. Pliler, 551 U.S. ___, 127 S. Ct. 2321 (2007), if the state court did not apply the correct harmless error standard, or even if it did not even recognize that there was error, federal habeas relief is still due to be denied if the constitutional error was harmless. Fry, 127 S. Ct. at 2328. And harmlessness is to be judged under the

11

Brecht v. Abrahamson, 507 U.S. 619, 113 S. Ct. 1710 (1993), standard of "substantial and injurious effect," instead of under the Chapman v. California, 386 U.S. 18, 87 S. Ct. 824 (1967), "harmless beyond a reasonable doubt" standard. Fry, 127 S. Ct. at 2328.

Assuming that it was error, the admission at the guilt stage of the statements by the victim about her discussions with Hodges concerning the indecent exposure charge did not have a substantial and injurious effect on the jury verdict. The evidence went only to motive, and as the Florida Supreme Court explained, there was other evidence of motive. See Hodges I, 595 So. 2d at 932. Moreover, while evidence of motive is admissible and may be important, motive is not an element of a murder prosecution. Norton v. State, 709 So. 2d 87, 92 (Fla. 1997). It is one type of evidence of guilt. Here, as the district court explained, the other evidence of Hodges' guilt was strong. Hodges IV, 2007 WL 604982, at *5. Hodges confessed to two witnesses on two separate occasions that he had killed Ms. Ricks, a witness placed his truck at the scene of the murder, and several witnesses disputed his alibi defense. Because admission of the testimony in question did not have a substantial and injurious effect on the jury verdict, the district court properly denied relief on this claim.

## B.

The detectives' testimony during the jury phase of the sentence stage went further. One of them testified that Ms. Ricks had told him that Hodges had kept coming by the place she worked "harassing her, trying to get her to drop the charges, and it was scaring her." The last time that detective had talked with her about the problem was just prior to her death.

The other detective testified that Ms. Ricks had told him that on several occasions Hodges had come into the place she worked asking her not to pursue the charges. The detective said that he had encouraged her not to back off, but he testified: "She didn't need any persuading. She was adamant about it." He recounted that she had told him that Hodges had been "a nuisance being there all the time, coming in the morning times whenever she would come to work, driving through. Things like that. She would call the police." This detective's last conversation with Ms. Ricks was about three weeks before she was murdered.

Debra Ricks, the victim's sister, also testified before the jury at the sentence stage. She recounted how her sister had called one morning and told her that "Hodges," who was "the one that flashed me," had come and asked her to drop the charges. The victim told her sister that Hodges had said that, "He didn't know what he was doing," but the victim had told him that, "Well, you should have

thought of that before you did it." The victim told her sister that Hodges had said he had a family, a job, and a reputation to protect, but that she had replied, "Well, I'm sorry, you know. I am not."

The evidence of these out-of-court statements by the victim was introduced at the sentence stage to prove the statutory aggravating circumstance that the murder "was committed to disrupt or hinder the lawful exercise of any governmental function or the enforcement of laws." See Fla. Stat. § 921.141(5)(g). The prosecutor relied on this evidence for that purpose, and in sentencing Hodges to death the trial court cited it in finding that the aggravating circumstance existed. (The court also found that an additional aggravating circumstance applied, because the murder "was committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification." See id. § 921.141(5)(i).)

Under the Florida capital punishment statute, this hearsay evidence was admissible at the sentence stage. Id. § 921.141(1) (any evidence the trial court deems probative "may be received, regardless of its admissibility under the exclusionary rules of evidence, provided the defendant is accorded a fair opportunity to rebut any hearsay statements"); see also Chandler v. Moore, 240 F.3d 907, 918 (11th Cir. 2001) (upholding the Florida statute against a Confrontation Clause attack). The Florida Supreme Court held that there was no

error in the admission of the evidence, Hodges I, 595 So. 2d at 933, as did the district court, Hodges IV, 2007 WL 604982, at *6.

We agree, but add another ground as our primary holding about this claim of relief. The reason the State had to rely on what Ms. Ricks told others in order to prove what Hodges had said and done to her is that she was not available to testify herself. The reason she was not available, of course, is that Hodges had murdered her, a fact proven beyond a reasonable doubt before the sentence stage began. Hodges' complaints about the State unfairly using Ms. Ricks' out-of-court declarations against him bring to mind the old tale about a defendant convicted of murdering his parents who demanded leniency on the ground that he was an orphan.

In Crawford v. Washington, 541 U.S. 36, 124 S. Ct. 1354 (2004), the Supreme Court said that "the rule of forfeiture by wrongdoing (which we accept) extinguishes confrontation claims on essentially equitable grounds." Id. at 62, 124 S. Ct. at 1370. It reiterated that point in Davis v. Washington, 547 U.S. ___, 126 S. Ct. 2266 (2006), explaining that "one who obtains the absence of a witness by wrongdoing forfeits the constitutional right to confrontation." Davis, 126 S. Ct. at 2280. The Court pointed out in Davis that the Federal Rules of Evidence codify the forfeiture doctrine for federal trials. See Fed. R. Evid. 804(b)(6) ("A statement

15

offered against a party that has engaged or acquiesced in wrongdoing that was intended to, and did, procure the unavailability of the declarant as a witness.").

There is no more thorough way to obtain the absence of a witness than by murdering her, and no more deserving circumstance for application of the rule of forfeiture by wrongdoing. In United States v. Thevis, 665 F.2d 616 (11th Cir. 1982), superseded by rule, Fed. R. Evid. 804(b)(6), as recognized in United States v. Zlatogur, 271 F.3d 1025, 1028 (11th Cir. 2001), we rejected a defendant's contention that the admission against him of the grand jury testimony of a witness he had murdered violated the Confrontation Clause. Id. at 630–31. The Thevis case arose before Federal Rule of Evidence 804(b)(6) was adopted, and our opinion used the language of waiver instead of forfeiture to explain the holding. Nonetheless, what we said there applies with full force here:

> [W]hen confrontation becomes impossible due to the actions of the very person who would assert the right, logic dictates that the right has been waived. The law simply cannot countenance a defendant deriving benefits from murdering the chief witness against him. To permit such subversion of a criminal prosecution "would be contrary to public policy, common sense, and the underlying purpose of the confrontation clause," and make a mockery of the system of justice that the right was designed to protect.

Id. at 630 (citation omitted). We reiterated that holding in United States v. Rouco, 765 F.2d 983 (11th Cir. 1985), explaining: "A defendant may waive his right to confront a witness. In this case, Rouco waived his right to cross-examine Benitez

16

by killing him.  The Sixth Amendment does not stand as a shield to protect the accused from his own misconduct or chicanery." Id. at 995 (internal citations and marks omitted).[1]

The Supreme Court's statements in Davis and Crawford about forfeiture by wrongdoing and our holdings in Thevis and Rouco compel the conclusion that the Florida Supreme Court's decision denying Hodges relief on his Confrontation Clause claim is not a decision that was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).

## III.

The other issue on which the certificate of appealability was granted is Hodges' contention that his constitutional right to be present at all the critical stages of his trial was violated because he was absent from the courtroom at the

---

[1] In Thevis we held that for purposes of the waiver or forfeiture doctrine the standard of proof for establishing that the defendant had murdered the victim is clear and convincing evidence.  Thevis, 665 F.2d at 631.  We have since recognized that part of Thevis was superseded by Fed. R. Evid. 804(b)(6) so that the standard is now proof by a preponderance of the evidence.  Zlatogur, 271 F.3d at 1028; see also Davis, 126 S. Ct. at 2280 (not taking a position on the evidentiary standard but noting that federal courts apply a preponderance of the evidence standard, and the tendency in state courts is to do the same).

In this case, whether the facts used to attribute the witness' absence to the defendant's wrongdoing must be proven by clear and convincing evidence or only a preponderance is irrelevant.  As we have noted, by the time the hearsay was admitted in the penalty stage of this trial, it had been established beyond a reasonable doubt that Hodges was responsible for the declarant being absent, because he had been convicted of murdering her.

17

end of the jury phase of the sentence stage.

The facts are these. Hodges was present during almost all of the sentence stage of the trial. He was present from the beginning, during the entire presentation of the testimony of five witnesses (three against and two for him), during all of the arguments, during the court's instructions to the jury, and when the jury left to begin deliberating at 11:50 a.m. The court recessed and Hodges was returned to his holding cell. At 12:05 p.m. the court came back into session and the judge announced on the record that Hodges, who had been in his cell while the jury was deliberating, was not in the courtroom because of a medical emergency. He had injured himself while attempting to commit suicide.

At about the same time that Hodges was trying to hang himself, the jury had sent the judge a written request for a list of the mitigating and aggravating circumstances to use in its deliberations. The request said: "We need the list of the ten conditions of mitigating and aggravating circumstances in the jury room." After discussing the request with the attorneys, the judge decided to bring the jury back into the courtroom and repeat his aggravating and mitigating instructions.

Before the jury was brought back, Hodges' counsel moved for a continuance of the sentence proceeding until Hodges could be present. In response, and after the paramedics had removed Hodges from the courthouse and

18

transported him to the hospital, the judge stated that: "For health reasons it's physically impossible for the defendant to be in the courtroom during the remainder of these proceedings. However, the Court determines that they must go on. And that we will proceed without his presence in the courtroom."

The jury was brought back into the courtroom. Instead of providing the jury with a written list of statutory aggravating and mitigating circumstances, as they had requested, the judge re-instructed the jury on the only two aggravating circumstances that had any support in the evidence, which were the two that had been included in his original instructions. The judge also instructed the jury that if it found either aggravating circumstance to be present, it should determine whether mitigating circumstances existed and outweighed the aggravating circumstances. The mitigating circumstances, the jury was told, included "any aspect of the defendant's character or record and any other circumstance of the offense." In a side bar after the instructions, defense counsel said, "That is fine, Judge." The jury then retired to resume deliberations at 12:30 p.m.

Sometime before 1:05 p.m. the court learned that the jury had reached a verdict. The judge went back on the record and discussed with the attorneys what he should say to the jury about Hodges' absence. The attorneys agreed that the court could inform the jury that Hodges was absent because of a medical

19

emergency. The jury was brought into the courtroom. After the jury handed the verdict to the bailiff but before it was read, the judge informed the jury that Hodges had a medical emergency and was not able to be present at that time. The jury's verdict, recommending a sentence of death, was then read and the jury was polled.

The sentence hearing before the judge was not held until four weeks later. By then Hodges had recovered from his injuries. He had also been examined by two mental health experts who concluded that while Hodges was still angry and frustrated enough that he might again attempt to commit suicide, he was mentally competent to be sentenced. Hodges was present during all of the judge phase of the sentence proceeding. Under Florida law, the judge and not the jury actually imposes the sentence in a capital case. See Fla. Stat. § 921.141(2)–(3).

The Florida Supreme Court rejected Hodges' claim that by conducting the last part of the jury phase of the sentence proceeding in his absence the trial court had violated his Sixth and Fourteenth Amendment right to be present at all critical stages of the trial. Hodges I, 595 So. 2d at 932–33. It held both that the part of the proceeding Hodges missed was not "a crucial portion of the trial where Hodges' absence would have caused him undue prejudice," and that "the trial court did not err in holding that Hodges voluntarily absented himself." Id. at 933.

The district court denied this claim after concluding that the state court

20

holding that Hodges could and did waive his right to be present by virtue of his own deliberate conduct was not contrary to or an unreasonable application of any Supreme Court precedent. See Hodges IV, 2007 WL 604982, at *12. We agree. Hodges has not pointed to any Supreme Court decision holding that one whose own voluntary conduct has caused him to be absent from trial may successfully claim that the trial may not continue without him.[2] He cites only two Supreme Court decisions in support of this claim. One is Drope v. Missouri, 420 U.S. 162,

---

[2] Hodges argues that the state trial court never actually found that his attempted suicide was voluntary. While the trial court did not explicitly make a voluntariness finding, we interpret the Florida Supreme Court's statement about the trial court's "holding that Hodges voluntarily absented himself," Hodges I, 595 So. 2d at 933, as either a finding that the trial court implicitly found that Hodges' action was voluntary, cf. Hoffman v. State, 474 So. 2d 1178, 1181 (Fla. 1985) ("We have held that a trial judge need not recite a finding of voluntariness if his having made such a finding is apparent from the record."), or as a finding by the Florida Supreme Court itself that the action was voluntary.

If we read the Florida Supreme Court's statement as interpreting the trial court's statements as implicitly finding Hodges' actions were voluntary, that is an entirely appropriate approach for an appellate court to take. See United States v. $242,484.00, 389 F.3d 1149, 1154 (11th Cir. 2004) (noting that trial court orders ought to be interpreted in the most favorable light and to include any implied factual findings necessary to support the judgment). If we read the Florida Supreme Court's statement as its own finding that Hodges acted voluntarily, that appellate court factfinding is itself entitled to deference. See Turner v. Crosby, 339 F.3d 1247, 1273 (11th Cir. 2003) (noting that in federal habeas proceedings the factfindings of state appellate courts are due the same deference as those of state trial courts); Bui v. Haley, 321 F.3d 1304, 1312 (11th Cir. 2003) (same); Hubbard v. Haley, 317 F.3d 1245, 1252 (11th Cir. 2003) (same).

Regardless of whether we consider the finding of voluntariness to have originated in the trial court or in the Florida Supreme Court, it is presumed correct, and Hodges has not carried his 28 U.S.C. § 2254(e)(1) burden of rebutting that presumption by clear and convincing evidence. Nor has he shown that the decision was based on an unreasonable determination of the facts within the meaning of § 2254(d)(2).

21

95 S. Ct. 896 (1975), where the Court expressly declined to decide the issue. Id. at 182, 95 S. Ct. at 909. The other is Illinois v. Allen, 397 U.S. 337, 90 S. Ct. 1057 (1970), which upheld the removal of a defendant from the courtroom for disruptive behavior. Id. at 347, 90 S. Ct. at 1062–63. Neither of those decisions constitutes "clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), that it is unconstitutional to continue a trial in the absence of a defendant who cannot be present because of self-inflicted injuries.

In Moore v. Campbell, 344 F.3d 1313 (11th Cir. 2003), applying § 2254(d)(1), we denied habeas relief where a state court had decided that a defendant who induced his own incompetence by means of a hunger strike had forfeited his right not to be tried while incompetent. Id. at 1321–24. In reaching that holding we cited not only the Supreme Court's Allen decision, but also its decision in Taylor v. United States, 414 U.S. 17, 20, 94 S. Ct. 194, 196 (1973), which affirmed a conviction obtained in the defendant's absence after he had absconded from the remainder of his trial. Moore, 344 F.3d at 1322. We also cited favorably in Moore two decisions from other courts holding that a defendant whose absence results from a suicide attempt has waived his right to be present at the trial. Id. (citing United States v. Crites, 176 F.3d 1096, 1097–98 (8th Cir.

22

1999); State v. Rice, 757 P.2d 889, 909–10 (Wash. 1988), receded from on other grounds by State v. Gentry, 888 P.2d 1105 (Wash. 1995)).

In light of all of these decisions, and in the absence of any Supreme Court decision to the contrary, we hold that the state court decision that Hodges waived his right to be present during the final part of the jury phase of the sentence stage of his trial is not "contrary to, [nor] . . . an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

We also reach an alternative holding. Even if we were convinced that the waiver holding was contrary to or an unreasonable application of clearly established federal law within the meaning of § 2254(d)(1), we would still deny relief because the Florida Supreme Court's additional holding that the small part of the sentence proceedings that Hodges missed was not a critical part of the trial is due deference under § 2254(e)(1).

While a criminal defendant has a constitutional right to be present at trial, that right is not unlimited in its scope. A defendant is only "guaranteed the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure." Kentucky v. Stincer, 482 U.S. 730, 745, 107 S. Ct. 2658, 2667 (1987). In Stincer, the Court

23

held that the defendant's right to be present was not violated by his exclusion from a hearing to determine the competency of two children who later testified against him. Id. In reaching that holding, the Supreme Court noted that the defendant had "presented no evidence that his relationship with the children, or his knowledge of facts regarding their background, could have assisted either his counsel or the judge in asking questions that would have resulted in a more assured determination of competency." Id. at 747, 107 S. Ct. at 2668.

Similarly, Hodges has not shown that his presence during the small part of the jury phase of the sentence stage that he missed would have resulted in "a more assured" sentence. Hodges was present throughout the entire guilt stage of the trial and all of the judge phase of the sentence stage. He was also present at the jury phase of the sentence stage during all of the testimony and presentation of the evidence, during the opening and closing arguments, and when the judge originally instructed the jury. The only part Hodges missed was the brief discussion between the attorneys and the judge about how to respond to the jury's request for a written list of the aggravating and mitigating circumstances, the judge's brief supplemental instructions to the jury (about which Hodges and his attorneys have never found any fault), and the rendition of the jury's advisory verdict recommendation. Beyond his unsupported assertion that his absence "was not harmless," Hodges has

not explained how the proceedings he missed were critical to the outcome of his case—how his presence would have enhanced the fairness of those proceedings.

The Florida Supreme Court's decision that the part of the sentence stage before the jury that Hodges missed was not a critical stage of the trial and sentence proceedings is not "contrary to, [nor does it] involve[] an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). We affirm the district court's denial of relief on the right to presence claim, both because Hodges voluntarily waived his right to be present and also because the part of the sentence stage that he missed was not a critical stage of the trial and sentence proceedings.

## IV.

The district court's denial of the petition for a writ of habeas corpus is AFFIRMED.

25