[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-10929
Non-Argument Calendar

_____

D. C. Docket No. 3:09-cv-00921-HLA-MCR

RUDOLPH LUDAWAY,

Petitioner-Appellant,

versus

SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS,
ATTORNEY GENERAL, STATE OF FLORIDA,

Respondents-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(February 1, 2013)

Before CARNES, BARKETT and HULL, Circuit Judges.

PER CURIAM:

Rudolph Ludaway, a Florida prisoner proceeding pro se, appeals the district

court's denial of his habeas petition under 28 U.S.C. § 2254. After review, we affirm.

## I. BACKGROUND

This appeal involves Ludaway's state court conviction for burglary. The main issues are (1) whether the jury ever saw a Velcro strip portion of the leg restraint that Ludaway wore under his pants, and (2) if so, whether his trial counsel was ineffective for not objecting. We thus carefully detail what happened at his trial.

## A.      Jury Selection in Ludaway's Criminal Trial in State Court

In Florida, Ludaway was charged with burglary of an unoccupied structure or conveyance, in violation of Florida Statute § 810.02(4). In 2006, Ludaway proceeded to a jury trial during which Ludaway wore a restraint on his right leg under his pant leg.[1]

During jury selection, Ludaway and his trial counsel met in the jury deliberation room to discuss which jurors to strike. Upon exiting that room, Ludaway's restraint malfunctioned and became caught in his right pant leg. According to Ludaway, this prevented him from bending his leg and exposed a Velcro strip on the leg restraint below the bottom of Ludaway's pant leg. Thus, Ludaway had to walk to defense counsel's table while a Velcro strip on his leg

---

[1]The record does not show why Ludaway was restrained for trial or who made the decision that Ludaway should be restrained for trial.

restraint was exposed.  At this time, the jury venire was seated in the first three rows of the courtroom, facing the jury deliberation room.

When Ludaway sat down at counsel's table, his trial counsel passed him a handwritten note which read, "[T]hey said pull your pants leg down, it got stuck up."  Ludaway attempted to pull his pant leg down but it remained caught in the leg restraint.  Trial counsel then wrote a note to Ludaway advising him to "just leave it."  Nothing else was done to ensure the Velcro portion of the leg restraint was concealed, and Ludaway's trial counsel did not bring it to the trial court's attention.  A jury was selected and impaneled.  No portion of the restraint was visible at any other time during Ludaway's trial.

## B.    Evidence at Ludaway's Criminal Trial in State Court

Because prejudice is an issue here, we review the evidence at Ludaway's trial.

Officer Erika Foley of the Jacksonville Sheriff's Office testified that on September 24, 2005 at about 11:30 p.m., Officer Foley and several other officers were dispatched to a reported burglary in progress at a construction site.  Officer Foley described the construction site as a fenced-in area containing approximately three trailers.  After the officers established a perimeter around the site, Officer Foley discovered a broken window on one of the trailers.  Officer Foley thought the window was broken because the window's screen was bent and lying on the

3

ground, and she saw small glass shards at the top of the window frame.

Through the broken window, Officer Foley observed Ludaway pacing back and forth inside the trailer. Officer Foley watched as Ludaway threw two items out of the window. Officer Foley later determined that these items were a piece of survey equipment and a silver radio. Officer Foley also saw other items on the ground outside the broken window, including food, a coffee maker, more survey equipment, and coffee filters. Via her radio, Officer Foley advised the other officers about what she observed and learned that a K-9 officer had arrived.

Officer M.T. Summers, the K-9 officer, testified next. Officer Summers and his dog were dispatched to the burglary in progress on September 24, 2005. Upon arrival, Officer Summers was told someone could still be inside the trailer. Officer Summers and his dog jumped the fence in the back of the construction area and came around to the front side of the trailer and the broken window. Walking around the trailer, Officer Summers saw something thrown out from the broken window: a level in a bright orange case. Officer Summers then saw Ludaway and ordered him out of the trailer. Ludaway complied by climbing out of the broken window, as the other doors and windows of the trailer were locked. After securing Ludaway, Officer Summers determined that no one else was inside the trailer.

On cross-examination, Officer Summers testified that he smelled "a little bit" of alcohol on Ludaway. But on redirect examination, Officer Summers stated

4

that Ludaway responded to all of Summers's commands, was able to exit the window without difficulty, and generally followed his instructions "to the letter."

Next, the jury heard testimony from Quentin Hill, a project administrator for the construction company that operated the construction site. From several photographs taken at the scene, Hill positively identified the objects outside the trailer as belonging to the construction company. Hill indicated that each of those items were inside the trailer when he left the site earlier that day. Hill identified the fence surrounding the site in another photograph, and noted that the barbed wire on top of the fence surrounding the construction site was beaten down. When Hill left the construction site on September 24, 2005, the trailer was locked and no one other than an inspector was allowed inside. Hill testified that Ludaway was not someone permitted inside the trailer and was not permitted to have any of the items found outside the trailer.

The defense called as its only witness Henry Scott. On the night of September 24, 2005, Scott threw a birthday party for Ludaway that went from about 7:00 p.m. to 10:00 p.m. Scott did not know if Ludaway was drinking earlier that day, but when Scott saw him at the party, Ludaway was "wasted." The last time Scott saw Ludaway that night was between 9:30 and 10:00 p.m. when Scott left the party. On cross-examination Scott testified that he did not know what Ludaway did after leaving the party.

5

The jury found Ludaway guilty of burglary.

## C.    Ludaway's Sentencing in State Court

After trial but before being sentenced, Ludaway wrote a pro se letter to the state trial court judge recounting the incident during jury selection in which his leg restraint became partially exposed.  Ludaway claimed he was prejudiced by the selected jurors observing him restrained.

At Ludaway's sentencing, Ludaway's counsel brought up the pro se letter regarding the leg restraint.  The state trial court acknowledged that it had received Ludaway's letter, but the court determined that the issue was a collateral matter that would have to be established through a postconviction Florida Rule of Criminal Procedure 3.850 motion as it "wasn't brought to [the court's] attention during the trial."  The state trial court advised Ludaway that the issue was preserved for postconviction proceedings.

The state trial court adjudicated Ludaway a habitual felony offender due to his prior criminal record and sentenced Ludaway to a term of eight years' imprisonment.

In Ludaway's direct appeal, Florida's First District Court of Appeal summarily affirmed Ludaway's burglary conviction.

## D.    Ludaway's 3.850 Proceedings in State Court

Proceeding pro se, Ludaway then filed a motion for postconviction relief

pursuant to Florida Rule of Criminal Procedure 3.850.  Ludaway's 3.850 motion claimed, among other things, that he received ineffective assistance of counsel because trial counsel (1) failed to inform the trial judge during jury selection that the jury venire observed Ludaway's leg restraint and (2) failed to object to Ludaway's "shackling" throughout the trial.

The state 3.850 court[2] granted Ludaway an evidentiary hearing on his ineffective-assistance claim and denied his other claims without a hearing.

At the evidentiary hearing, Ludaway proceeded pro se, and both Ludaway and his trial counsel, Allison Graham, testified.

Ludaway recounted the leg-restraint incident during jury selection and submitted Graham's handwritten notes that she passed to Ludaway at counsel's table.  As to her first note, "they said pull your pants leg down, it got stuck up," Ludaway stated that he did not know who "they" referred to, but he assumed it referred to one of the bailiffs who brought it to counsel Graham's attention on the way into the courtroom.

Ludaway testified that he tried but failed to conceal the leg restraint, and that Graham eventually told him to leave it as it was.  When questioned as to whether any juror saw the leg restraint, Ludaway said it was "inevitable," as the jurors watched him enter the courtroom and walk toward counsel's table, and Ludaway

---

[2]The same state court judge who presided over Ludaway's trial also presided over Ludaway's 3.850 proceedings.

had to stop to try to conceal the restraint.

The state called Ludaway's trial counsel, Graham, to testify. Graham said Ludaway's account of what happened was "mostly accurate." Graham testified that before she and Ludaway entered the courtroom, a bailiff told her that Ludaway's pant leg had gotten stuck or that the restraint had slid down his leg. As a result, Graham testified, a Velcro strip was visible beneath the cuff of Ludaway's pant leg. Graham asked Ludaway if he could pull up the restraint, but he could not. Graham and Ludaway then entered the courtroom. The jury panel was seated in the audience and was not yet in the jury box. Graham and Ludaway went to sit at counsel's table.

When Ludaway began to fiddle with his pant leg, Graham passed him a note instructing him to leave it alone, so that Ludaway would not draw attention to it. Graham admitted that she did not bring the visibility of Ludaway's restraint to the court's attention, but she also could not recall any juror looking at Ludaway's leg. Graham conceded that she could have requested that the court strike the panel and call a new one.

On cross-examination by Ludaway, Graham agreed that it was possible that the jurors saw the bottom of Ludaway's pant leg (and thus the exposed Velcro strip) once Ludaway sat at counsel's table. The 3.850 judge at this point interjected, stating that "[t]hey could not have seen [Ludaway's] leg . . . after [he]

8

sat down at that table. . . . It was concealed by the table." Ludaway disagreed: "We don't know."

When Ludaway pressed Graham as to why she did not inform the trial judge of the exposed restraint, Graham stated: "I don't remember specifically what my thought process was, but I don't—I didn't have any reason to believe that anybody, if they had seen the Velcro, would know what it was for and would therefore be prejudiced against [Ludaway]."

After the evidentiary hearing, the 3.850 court denied Ludaway's ineffective-assistance claim. The 3.850 court found that, during jury selection, a portion of Ludaway's leg restraint—a Velcro strip—was exposed to the jury venire. But the 3.850 court also found that "there [was] no proof that any specific member of [Ludaway's] jury panel saw the Velcro strip, much less that such jury member could have known what it was."

Moreover, the 3.850 court found the evidence against Ludaway "overwhelming," as he was caught by law enforcement inside the construction office, "it having been broken into at a late evening hour." Thus, the 3.850 court concluded, "[Ludaway] has totally failed to demonstrate that, but for his attorney's failure to call to the attention of the Court [the visibility of Ludaway's restraint], a different trial outcome would have resulted." Accordingly, the 3.850 court denied Ludaway's 3.850 motion.

9

Ludaway appealed pro se the denial of his 3.850 motion.  Florida's First District Court of Appeal affirmed per curiam without written explanation.[3]

## E.    Ludaway's Federal Habeas Petition

In September 2009, Ludaway filed his pro se § 2254 petition.  Ludaway's § 2254 petition raised nine claims, including an ineffective-assistance claim premised on trial counsel's failure to (1) inform the state trial judge that the jury observed Ludaway's leg restraint and (2) object to Ludaway's "shackling" for trial.  Although Ludaway says his leg restraint was visible, Ludaway does not challenge the 3.850 court's fact finding that only the Velcro strip portion of his leg restraint was exposed.

The district court denied Ludaway's § 2254 petition.  As to Ludaway's ineffective-assistance claim, the district court concluded that Ludaway had not met his burden under the Antiterrorism and Effective Death Penalty Act ("AEDPA") and Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984), to show either deficient performance or prejudice.  First, trial counsel's performance was not deficient when she decided not to bring the visibility of the Velcro portion of Ludaway's leg restraint to the state trial court's attention.  Second, Ludaway failed to show prejudice because the evidence against him was overwhelming.  Thus, the

---

[3]When the last state court rendering judgment affirms without explanation, we presume that the judgment rests on the reasons given in the last reasoned decision.  Ylst v. Nunnemaker, 501 U.S. 797, 803-05, 111 S. Ct. 2590, 2594-95 (1991).

10

district court concluded that the state 3.850 court did not unreasonably apply clearly established federal law when it rejected Ludaway's ineffective-assistance claim.

The district court granted a certificate of appealability on Ludaway's ineffective-assistance claim.

## II. DISCUSSION

### A.    AEDPA

We review a district court's denial of a § 2254 habeas petition de novo as to questions of law and mixed questions of law and fact.  Rhode v. Hall, 582 F.3d 1273, 1279 (11th Cir. 2009).  Like the district court, we also review the state habeas court's decision.  See Putnam v. Head, 268 F.3d 1223, 1240 (11th Cir. 2001).

Under 28 U.S.C. § 2254(d), as amended by AEDPA, a federal court may not grant habeas relief on a state prisoner's claim that was denied on the merits in state court unless the state court decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

Under the "contrary to" clause of § 2254(d), a federal habeas court may

11

grant a petitioner habeas corpus relief if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court, on a set of materially indistinguishable facts, decides a case differently than the Supreme Court has.  Williams v. Taylor, 529 U.S. 362, 412-13, 120 S. Ct. 1495, 1523 (2000).  Under the "unreasonable application" clause, a federal court may grant a petitioner habeas corpus relief if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.  Id.

## B.     Ludaway's Ineffective-Assistance Claim on Appeal

On appeal, Ludaway claims that his trial counsel rendered ineffective assistance of counsel when she (1) failed to object or call to the state trial court's attention the potential visibility of Ludaway's leg restraint during jury selection and (2) failed to object to Ludaway's wearing of a leg restraint during the trial.[4]

The merits of Ludaway's ineffective assistance of counsel claim are governed by the standard announced in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984).  See Williams, 529 U.S. at 390, 120 S. Ct. at 1511.  Under Strickland, Ludaway must show both (1) that his "counsel's performance was

---

[4]In his brief on appeal, Ludaway also argues that his trial counsel provided ineffective assistance when she failed to raise before the trial court the issue of whether the state proved a prima facie case of burglary.  Because neither the district court nor this Court granted Ludaway a certificate of appealability on this issue, we do not consider it here.  See 28 U.S.C. § 2253(c); Hodges v. Att'y Gen., Fla., 506 F.3d 1337, 1340-42 (11th Cir. 2007).

12

deficient" and (2) that "the deficient performance prejudiced the defense." 466 U.S. at 687, 104 S. Ct. at 2064. Prejudice is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694, 104 S. Ct. at 2068. And since a habeas petitioner must show both deficient performance and prejudice, a court may dispose of a Strickland claim based on a determination that a defendant has failed to show either prong without considering the other. See id. at 697, 104 S. Ct. at 2069.

Moreover, we do not apply Strickland de novo, "but rather through the additional prism of AEDPA deference." Lawrence v. Sec'y, Fla. Dep't of Corr., 700 F.3d 464, 477 (11th Cir. 2012). Thus, "the pivotal question is whether the state court's application of the Strickland standard was unreasonable." Id. (internal quotation marks and alteration omitted).

We need not reach the performance issue here because Ludaway cannot meet the prejudice prong in any event. For two reasons, we conclude that the state 3.850 court's decision finding that Ludaway failed to demonstrate prejudice was not contrary to or an unreasonable application of Strickland or based on an unreasonable determination of the facts.

First, while the parties dispute whether any juror saw Ludaway's leg restraint, the state 3.850 court found—and Ludaway does not dispute—that the only visible part of the restraint was a Velcro strip at the bottom of Ludaway's pant

13

leg.  No evidence was presented in the 3.850 proceedings that indicated a juror would know the significance of the Velcro strip.  And Ludaway does not argue that any portion of his leg restraint was visible at any time in the trial other than during jury selection.  Thus, any jury observation of the Velcro strip was brief and unlikely to lead the jury to believe Ludaway was restrained.

Second, the evidence of Ludaway's guilt was overwhelming.  Two police officers testified that they discovered Ludaway in the construction trailer late at night and watched him throw objects—identified as belonging to the construction company—out of the locked construction trailer.  The construction company's project administrator testified that Ludaway was not a person permitted inside the trailer or on the construction site.

On this record, we cannot say that the state 3.850 court's conclusion that Ludaway failed to show prejudice was contrary to or an unreasonable application of Strickland.  Nor was it based on an unreasonable determination of the facts in light of the state court evidence.  Accordingly, we affirm the district court's denial of Ludaway's § 2254 petition.[5]

---

[5]Ludaway also argues that, even if a juror did not see the leg restraint, his trial counsel was ineffective for not objecting to the use of any leg restraint during trial.  It is not clear from the order on Ludaway's 3.850 motion that the state 3.850 court considered this specific ineffective-assistance claim.  In the 3.850 proceedings, Ludaway did not put forth any evidence that he was prejudiced by the restraining itself, even if it was not seen by a juror.  Thus, even under de novo review, we conclude that Ludaway's claim fails on the prejudice prong.  See Rompilla v. Beard, 545 U.S. 374, 390-93, 125 S. Ct. 2456, 2467-69 (2005) (examining whether the petitioner showed prejudice under Strickland de novo because the state court had failed to

**AFFIRMED.**

---

reach the issue after deciding counsel's representation was adequate); see also Berghuis v. Thompkins, 130 S. Ct. 2250, 2265 (2010) (concluding that even if AEDPA deference did not apply to petitioner's claim, petitioner was not entitled to federal habeas relief if on de novo review of the record petitioner failed to show prejudice under Strickland).