342 So.2d 1087 (1977)
STATE of Florida, Appellant,
v.
Richard Lee EBY, Appellee.
No. 75-1769.
District Court of Appeal of Florida, Second District.
March 4, 1977.
Robert L. Shevin, Atty. Gen., Tallahassee, and Richard G. Pippinger, Asst. Atty. Gen., Tampa, for appellant.
Herbert T. Schwartz, Gainesville, for appellee.
*1088 McNULTY, Judge.
The state appeals from an order granting appellee post-conviction relief under Fla.R. Crim.P. 3.850 for the failure of appointed trial defense counsel to present evidence relating to certain possible defenses. We reverse.
On January 1, 1972, appellee was charged by indictment with two counts of first degree murder, he having allegedly shot and killed his wife and her paramour while they were engaged in sexual intercourse. A trial by jury before Circuit Judge Oliver Maxwell resulted in a verdict of guilt on both counts with a recommendation of mercy. Appellee was thereafter adjudged guilty and sentenced to life imprisonment. He took a direct appeal asserting error in the failure of the trial court to give a certain "heat of passion" instruction as requested by defense counsel and this court affirmed without opinion.[1]
On May 7, 1973, appellee filed the instant motion alleging that he had been denied adequate defense by the failure of his court-appointed counsel, Everett Q. Jones, to assert several available affirmative defenses. After a hearing at which appellee was not afforded an opportunity to appear, Circuit Judge Laurence I. Goodrich denied the motion. This court reversed on the ground that appellee should have been present at the hearing to testify as to matters within his personal knowledge.[2]
On remand, and following four days of new hearings (again before Judge Goodrich) on the motion, the court entered an order on November 13, 1975, granting the motion and awarding a new trial.
Relevant facts relating to the alleged "available" defenses at trial are as follows: In response to the prosecutor's opening statement, defense counsel Jones made an opening statement that the defense would establish in evidence a relationship between appellee's experiences as a prisoner of the Japanese in World War II and his apparent insanity at the time he committed the homicides. Counsel's opening statement further suggested that the defense intended to establish by medical testimony a "heat of passion" theory of homicide.
The state's case in chief then followed; and by its proof left little room for doubt that appellee killed his wife and her paramour while they were engaged in sexual intercourse. Among other evidence to this effect, the state presented an inculpatory statement or confession of the defendant made shortly after the homicides which was formally introduced by stipulation of the parties.
A defense motion for judgment of acquittal was denied at the close of the state's case. The defense thereupon closed without calling appellee to testify and without producing any additional evidence before the jury. Appellee's instant motion relies on that course of events in support of his basic contention that his appointed trial counsel did not adequately represent him.
At the evidentiary hearing on the instant motion, attorney Jones testified virtually without contradiction to the following. First, he felt after an initial interview with appellee that there was a good chance of gaining a manslaughter conviction on a heat of passion defense. However, after further investigation of the case, Jones questioned whether he could substantiate his heat of passion defense through competent medical testimony. Prior to trial, he had a discussion with Dr. Sprehe, a psychiatrist who had examined appellee. He testified at the hearing that Dr. Sprehe told him that it was his opinion that appellee received vicarious pleasure from seeing his wife having intercourse with other men and, further, that appellee had told him (Sprehe) that he had watched his wife and her lover for some four or five minutes prior to the actual shooting. Jones stated that he later talked to appellee but the latter denied what Dr. Sprehe had stated. (We interpose to point out, here, that in appellee's admissions which were stipulated *1089 into evidence he himself stated that he may have watched the act of intercourse for as long as five minutes before getting the gun which was used to shoot them.) Further, Dr. Sprehe and Dr. Fesler agreed appellee was sane at the time of the offense.
Jones testified further that he thus determined prior to trial that there was no possible medical evidence which he could produce which would benefit appellee; but after discussing tactics with the appellee, he listed a number of witnesses, including medical witnesses, in an attempt to keep the state guessing.
Additionally, Jones stated that the confession statement made by defendant and stipulated into evidence during the state's case as aforesaid was, in Jones' opinion, essentially self-serving inuring to the benefit of appellee because appellee, while stating he shot the victims, made many statements tending to establish a defense of insanity. Even a cursory reading of that statement, with its rambling, paranoiac narration of appellee's background, supports this conclusion. Thus Jones believed that the state had already placed the defense case before the jury in a favorable manner without exposing appellee or the doctors to cross-examination.
Further, Jones was concerned about exposing appellee to cross-examination concerning a third drinking glass which through discovery Jones knew had been found in the bedroom where the crime was committed. In the face of all this, Jones advised appellee not to testify at trial but still left the ultimate decision to appellee personally. He then said appellee decided not to testify.
Jones also testified that he made his opening statement indicating that the jury would hear medical testimony. He wished to keep his options open; but after the state introduced the confession statement of appellee, he decided not to put on the medical testimony. He testified that he did not wish to prove premeditation for the state; and this consideration of strategy weighed heavily upon his decision not to call witnesses.
Dr. Sprehe and Dr. Fesler also testified. Each said that had he testified at trial he would have offered his medical opinion that appellee acted in the heat of passion and each was firm in his opinion that appellee's acts were consistent with a person disassociated from reality and acting from passion, rage and anger.
In his order Judge Goodrich found that, by "not having a known available or reasonably ascertainable defense presented [heat of passion], appellee's trial suffered a serious substantive deficit", despite the fact that the judge considered Jones to be competent in terms of training and ability. The judge stated that the jury actually was left with only two choices: (1) not guilty of any crime or (2) guilty of first degree murder. Thus, the court granted a new trial. We think he was wrong.
To begin with, we point out that the argument relating to a "heat of passion" defense was settled in appellee's direct appeal.[3] A review of the record in that appeal reveals that a "heat of passion" jury instruction was in fact given and that such a defense was an issue at trial. Appellee's principal contention in that appeal was that the standard charge given was inadequate and that the court erred in refusing a charge prepared by him. We rejected his contention.
Secondly, a decision not to raise certain possible defenses or call certain defense witnesses is ordinarily a matter of personal judgment and strategy within the prerogatives of defense counsel. As such, it is not a proper predicate for a collateral attack on the competence of counsel unless it is so irresponsibly exercised as to constitute "inadequate" representation.[4] Here, the undisputed testimony of trial counsel revealed a deliberative, well-founded decision *1090 to pursue the course taken which, on its face, is not unreasonable nor irresponsible. No evidence was before the trial court to support a contrary finding; and neither second-guessing nor substituting the court's own hindsight judgment for that of trial counsel will suffice to reject as "inadequate" the role of trial counsel.
Finally, contrary to the opinion of the trial judge as stated in his order granting the relief sought by appellee, the trial jury was not left by defense counsel with only two choices: not guilty of any crime or guilty of first degree murder. The record on the original appeal before this court affirmatively shows that the trial jury was instructed on all degrees of homicide, including instructions on the defense of insanity, justifiable homicide, excusable homicide (which includes the "heat of passion" instruction) and manslaughter precisely as contained in the Florida Standard Jury Instructions in criminal cases as adopted by our Supreme Court. The jury in the instant case was appropriately instructed and our affirmance on those grounds in the original appeal settled the matter.
We are of the opinion therefore, and so hold, that the trial judge erred as a matter of law in finding that appellee's trial "suffered a serious substantive deficit" by not having "a known available or reasonably ascertainable defense presented."
In view whereof, the order granting appellee's motion for post-conviction relief and granting a new trial should be, and it is hereby, reversed.
The cause is remanded with directions to set aside the order and to reinstate and leave standing the convictions, adjudications of guilt and sentences of confinement entered against appellee herein.
BOARDMAN, C.J., and SCHEB, J., concur.
NOTES
[1] Eby v. State, 276 So.2d 566 (Fla.2d DCA 1973).
[2] Eby v. State, 306 So.2d 602 (Fla.2d DCA 1975).
[3] n. 1, supra.
[4] See Herring v. Estelle, 491 F.2d 125 (5th Cir.1974); Mims v. Wainwright, 403 F. Supp. 552 (M.D.Fla. 1975); see also Fuller v. Wainwright, 238 So.2d 65 (Fla. 1970).