990 So.2d 581 (2008)
Emmanuel RIDEL, Appellant,
v.
The STATE of Florida, Appellee.
No. 3D07-1288.
District Court of Appeal of Florida, Third District.
August 6, 2008.
*582 Emmanuel Ridel, in proper person.
Bill McCollum, Attorney General, and Nikole Hiciano, Assistant Attorney General, for appellee.
Before WELLS, CORTIÑAS, and ROTHENBERG, JJ.
CORTIÑAS, J.
Emmanuel Ridel ("Ridel") appeals the trial court's denial of his post conviction motion seeking to withdraw his guilty plea pursuant to Florida Rule of Criminal Procedure 3.850. Ridel claims that his counsel failed to investigate and prepare a defense, and seeks review on the basis that his plea was involuntary due to ineffective assistance of counsel. Because we conclude that Ridel's counsel was not ineffective, the trial court's denial of post conviction relief is affirmed.
Ridel was arrested at the scene of an attempted robbery (the "Mannequin Case"). Police had placed mannequins in a car parked in an area where there had been a series of robberies. After observing him approach the car, the officers detained Ridel, who was carrying a firearm. Ridel subsequently provided police with a taped statement in which he admitted that he intended to commit a robbery. He also admitted his involvement in prior robberies in the area. The State filed thirty charges against Ridel, stemming from separate incidents, including, among others, sexual battery, armed robbery, and kidnapping. Ridel faced multiple life sentences as a habitual offender. As part of a plea deal negotiated by his counsel, Ridel pled guilty to all thirty charges and received a fifteen-year sentence as a habitual offender, with a three-year mandatory minimum and credit for time served.
The issue on appeal stems from the decision made by Ridel's counsel to investigate *583 only the three charges related to the Mannequin Case and not to investigate the other twenty-seven charges. At the evidentiary hearing on Ridel's motion, his counsel testified that he reached this decision after reviewing Ridel's confession to the Mannequin Case and deposing the lead detective. Ridel's counsel determined that, in light of his thirty-two years of experience as a criminal defense attorney, a jury would likely convict Ridel of the three charges. On those three charges alone, Ridel faced a life sentence. Due to the strength of the evidence against Ridel, his counsel believed that the best strategy for his client would be to obtain an omnibus plea deal for all thirty charges. This resulted in a fifteen-year sentence.
Ridel argues that the decision not to investigate the other twenty-seven charges was unreasonable and, therefore, constituted grounds for withdrawal of his guilty plea. He contends that convictions for these other charges were "by statute more collaterally onerous" than the three charges that his counsel investigated. He argues that some of the other twenty-seven charges were "ripe for summary dismissal," and once dismissed, he would have either gone to trial or obtained a more favorable plea bargain. In turn, Ridel suggests that if a jury convicted him, or if he still pled guilty, fewer charges could have resulted in a lower sentencing point score, which may have reduced the incentive for the judge to sentence him as a habitual offender.
The State contends that the decision of Ridel's counsel not to investigate the other charges against Ridel was a reasonable strategic decision made after reviewing the evidence against his client.
We find that Ridel failed to establish that his counsel was ineffective under Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Strickland held that "[a] convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction.... must show that counsel's performance was deficient.... [and] that the deficient performance prejudiced the defense." Id. at 687, 104 S.Ct. 2052. Ridel failed to satisfy either prong of this test.
In order to meet the deficient performance component of Strickland, Ridel "must overcome the presumption that, under the circumstances, the challenged action `might be considered sound trial strategy.'" Id. at 689, 104 S.Ct. 2052 (quoting Michel v. Louisiana, 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955)). Moreover,
[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.
Id. at 690-91, 104 S.Ct. 2052.
Ridel's counsel's investigation into the law and facts related to the three charges stemming from the Mannequin Case revealed: (1) the strength of the State's case against his client; and (2) the consequences of a conviction on those charges alone. Thus, his decision to obtain the fifteen-year plea, contrasted with the multiple life sentences facing his client, was a reasonable strategic decision. See Occhicone v. State, 768 So.2d 1037, 1048 (Fla.2000) ("[S]trategic decisions do not constitute ineffective assistance of counsel if alternative courses have been considered and rejected and counsel's decision was reasonable under the norms of professional *584 conduct."); Scott v. Dugger, 604 So.2d 465, 469-70 (Fla.1992) ("Counsel's performance cannot be deemed deficient for failing to raise every conceivable aspect of a claim."); State v. Eby, 342 So.2d 1087, 1089 (Fla. 2d DCA 1977) ("[A] decision not to raise certain possible defenses or call certain defense witnesses is ordinarily a matter of personal judgment and strategy within the prerogatives of defense counsel.").
Even if his counsel's decision not to investigate the remaining twenty-seven charges could be deemed deficient, Ridel still fails to establish the prejudice component of Strickland. Strickland, 466 U.S. at 694, 104 S.Ct. 2052 ("The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."); Hill v. Lockhart, 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985) (addressing the prejudice component of Strickland and holding that a defendant challenging his guilty plea must demonstrate "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."). Ridel has failed to establish that his counsel's decision not to investigate mistakenly caused him to plead guilty.
[I]n determining whether a reasonable probability exists that the defendant would have insisted on going to trial, a court should consider the totality of the circumstances surrounding the plea, including such factors as whether a particular defense was likely to succeed at trial, the colloquy between the defendant and the trial court at the time of the plea, and the difference between the sentence imposed under the plea and the maximum possible sentence the defendant faced at a trial.
Grosvenor v. State, 874 So.2d 1176, 1181-82 (Fla.2004). Ridel's assertion that a defense was likely to succeed rests on the purported existence of exculpatory evidence and alibi witnesses. However, the record does not support these claims. Regarding the DNA evidence, the lack of which Ridel claims as exculpatory in the sexual battery charge, Ridel's counsel testified that Ridel admitted to a non-sexual role in that crime, explaining the lack of incriminating DNA. Although "[t]rial counsel has a duty to investigate any potential... exculpatory evidence that may assist his or her client," Bell v. State, 965 So.2d 48, 62 (Fla.2007), "[t]rial counsel cannot be deemed ineffective for failing to raise meritless claims or claims that had no reasonable probability of affecting the outcome of the proceeding." Teffeteller v. Dugger, 734 So.2d 1009, 1023 (Fla.1999). Regarding Ridel's alleged alibi witnesses for the sexual battery charge, one such witness, Ridel's mother, testified at the evidentiary hearing that she could not vouch for her son's whereabouts at the time of the crime.[1] Counsel cannot be deemed ineffective for failing to call an alibi witness who would not have helped his or her client. See Happ v. State, 922 So.2d 182, 192 (Fla.2005) (finding that counsel was not ineffective for failing to call a purported alibi witness whose testimony would have conflicted with another witness's alibi testimony).
The plea colloquy between Ridel and the trial court further established the absence of a reasonable probability that his counsel's failure to investigate mistakenly caused Ridel to plead guilty. See Grosvenor, 874 So.2d at 1182. To determine the *585 validity of a guilty plea, the standard is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." North Carolina v. Alford, 400 U.S. 25, 31, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). The record demonstrates that the trial court conducted an extensive colloquy to establish that Ridel's guilty plea was voluntary and intelligent. The court explained and confirmed that Ridel: (1) understood that he was pleading guilty to all thirty charges; (2) had adequately consulted with his counsel; (3) knew the terms of his sentence; (4) had an 11th-grade education and was not under the influence of drugs or alcohol; and (5) understood that he forsook certain constitutional rights by pleading guilty. Finally, the difference between the fifteen-year sentence Ridel received in exchange for pleading guilty and the multiple life sentences he faced if convicted at trial did not establish a reasonable probability that, but for his counsel's failure to investigate, Ridel would have insisted on going to trial.
In conclusion, because Ridel does not satisfy either the deficient performance or prejudice components of Strickland, we affirm the lower court's denial of his post conviction motion seeking to withdraw his guilty plea.
NOTES
[1] Counsel testified that he did not file alibi witnesses for the sexual battery case because it would have gone to trial after the Mannequin Case, enabling him to investigate those witnesses at a later time.